1   JEFFREY D. WOHL (Cal. State Bar No. 96838)
    LAURA N. MONFREDINI (Cal. State Bar No. 221153)
2   JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
    PAUL, HASTINGS, JANOFSKY & WALKER LLP
3   55 Second Street, 24th Floor
    San Francisco, California  94105
4   Telephone: (415) 856-7000
    Facsimile: (415) 856-7100
5   jeffwohl@paulhastings.com
    lauramonfredini@paulhastings.com
6   jeffmichalowski@paulhastings.com

7   Attorneys for Defendant
    United Way of the Bay Area

8

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11

12   GEORGE CHEN,                              No.  C-07-02785-WHA (JCS)

13              Plaintiff,                     **NOTICE OF MOTION AND MOTION TO
                                               COMPEL ARBITRATION OF PLAINTIFF'S
14        vs.                                  SECOND CAUSE OF ACTION FOR LIBEL;
                                               MEMORANDUM IN SUPPORT OF
15   UNITED WAY OF THE BAY AREA and,           MOTION**
     and DOES 1-10 inclusive,
16                                             Date:          August 9, 2007
                Defendants.                    Time:          8:00 a.m.
17                                             Courtroom:     9, 19th Floor
                                               Judge:         Hon. William H. Alsup
18
                                               Complaint filed:   April 26, 2007
19                                             Trial date:        None set yet

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

To plaintiff George Chen and his attorneys of record:

PLEASE TAKE NOTICE that on August 9, 2007, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9 of this Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, before the Honorable William H. Alsup, defendant United Way of the Bay Area ("United Way") will, and hereby does, move for an order pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and the California Arbitration Act, Cal. Code Civ. Proc. § 1280 *et seq.*, compelling plaintiff George Chen to arbitrate his Second Cause of Action for Libel in accordance with the terms of his arbitration agreement with United Way, a true copy of which is attached as Exhibit A to the Declaration of Eric McDonnell in Support of Motion to Compel Arbitration of Plaintiff's Second Cause of Action for Libel ("McDonnell Declaration"), which accompanies this motion.

This motion is made on the ground that in the parties' arbitration agreement, plaintiff agreed that his Second Cause of Action for Libel would be resolved by arbitration because it is a claim that arises from his employment with United Way and in his arbitration agreement plaintiff agreed to arbitrate all such claims; his arbitration agreement is enforceable; and, despite United Way's demand, plaintiff has refused to comply with his arbitration agreement.

This motion is based on this notice of motion and the following memorandum in support of the motion; the accompanying McDonnell Declaration, Declaration of Jeffrey D. Wohl in Support of Motion to Compel Arbitration of Plaintiff's Second Cause of Action for Libel, and proposed Order Granting Motion to Compel Arbitration of Plaintiff's Second Cause of Action for Libel; the Court's record of this action; all matters of which the Court may take notice; and such other evidence as may be presented to the Court at or before the time of the hearing on this motion.

Dated:  July 5, 2007.                    JEFFREY D. WOHL
                                         LAURA MONFREDINI
                                         JEFFREY P. MICHALOWSKI
                                         PAUL, HASTINGS, JANOFSKY & WALKER LLP


                            By:    /s/ Jeffrey D. Wohl
                                          Jeffrey D. Wohl
                                        Attorneys for Defendant
                                      United Way of the Bay Area

---

MOTION TO COMPEL ARBITRATION
                                         U.S.D.C., N.D. Cal., No. C-07-02785-WHA (JCS)

1

**TABLE OF CONTENTS**

2

*Page*

3    Table of Authorities ......................................................................................................................... ii

4    I.      INTRODUCTION/SUMMARY OF ARGUMENT ............................................................ 1

     II.     STATEMENT OF FACTS ................................................................................................. 2

5            A.      Background ............................................................................................................. 2

6            B.      As Part of His Employment Contract, Plaintiff Agreed to Arbitrate Any
                     Employment-Related Claims He Might Have Against United Way ...................... 4

7            C.      Six Years Later, After His Employment with United Way Was Terminated
                     Because of His Abusive Conduct Towards His Staff, Plaintiff Sued United
8                    Way for Wrongful Termination in Violation of Public Policy and Libel,
                     and Refused to Abide by His Arbitration Agreement ............................................ 5

9
     III.    PLAINTIFF'S ARBITRATION AGREEMENT SHOULD BE ENFORCED
10           WITH RESPECT TO HIS SECOND CAUSE OF ACTION FOR LIBEL ........................ 6

11           A.      Both the United States and the State of California Have Strong Policies
                     Favoring Enforcement of Arbitration Agreements ............................................... 6

12           B.      Plaintiff's Agreement to Arbitrate Is Enforceable with Respect to His
                     Second Cause of Action for Libel .......................................................................... 8

13   IV.     CONCLUSION ................................................................................................................. 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

*Page*

3  **Cases**

4  *AT&T Techs. Inc. v. Communications Workers of America,*
      475 U.S. 643 (1986) .................................................................................... 6

5

*America Software, Inc. v. Ali,*
6      46 Cal. App. 4th 1386 (1996) ................................................................... 9, 11

7  *Armendariz v. Foundation Health Psychcare Services,*
      24 Cal. 4th 83 (2000) ...................................................................... 1, 7, 12, 13

8

*Boghos v. Certain Underwriters at Lloyd's of London,*
9      36 Cal. 4th 495 (2005) ............................................................................ 8, 12

10  *Brookwood v. Bank of America,*
      45 Cal. App. 4th 1667 (1996) ......................................................................... 7

11

*Broughton v. Cigna Healthplans,*
12      21 Cal. 4th 1066 (1999) ................................................................................. 1

13  *Cione v. Foresters Equity Services, Inc.,*
      58 Cal. App. 4th 625 (1997) ........................................................................... 7

14

*Circuit City Stores, Inc. v. Ahmed,*
15      283 F.3d 1198 (9th Cir. 2002)................................................................... 9, 10

16  *Cleveland v. Oracle Corp.,*
      2007 WL. 915414 (N.D. Cal. 2007).......................................................... 10, 11

17

*Dean Witter Reynolds Inc. v. Byrd,*
18      470 U.S. 213 (1985).................................................................................. 1, 4, 6

19  *Doers v. Golden Gate Bridge, Highway & Transport District,*
      23 Cal. 3d 180 (1979) ..................................................................................... 7

20

*Dryer v. Los Angeles Rams,*
21      40 Cal. 3d 406 (1985) ..................................................................................... 7

22  *Fire Fighters Union v. City of Vallejo,*
      12 Cal. 3d 608 (1974) ..................................................................................... 7

23

*Giuliano v. Inland Empire Personnel, Inc.,*
24      149 Cal. App. 4th 1276 (2007) .................................................................. 8, 13

25  *Independent Association of Mailbox Center Owners Inc. v. Sup. Ct.,*
      133 Cal. App. 4th 396 (2005) ....................................................................... 13

26

*Kinney v. United HealthCare Services, Inc.,*
27      70 Cal. App. 4th 1322 (1999) ....................................................................... 11

28

1

**TABLE OF AUTHORITIES**
(*cont'd*)

2

*Page*

3    *Moses H. Cone Mem'l Hospital v. Mercury Const. Corp.*,
         460 U.S. 1 (1983) ................................................................................................ 6

4

*Pac. Investment Co. v. Townsend*,
5         58 Cal. App. 3d 1 (1976)...................................................................................... 7

6    *Parker v. McCaw*,
         125 Cal. App. 4th 1494 (2005) ........................................................................... 13

7

*Robison v. City of Manteca*,
8         78 Cal. App. 4th 452 (2000) ............................................................................... 11

9    *Szetela v. Discover Bank*,
         97 Cal. App. 4th 1094 (2002) .............................................................................. 9

10

*Vianna v. Doctors' Management Co.*,
11        27 Cal. App. 4th 1186 (1994) ............................................................................... 7

12   **Statutes**

13   Cal. Code Civ. Proc. § 1280.......................................................................................... 1, 6, 7

14   Federal Arbitration Act, 9 U.S.C. § 1 ........................................................................... 1, 5, 6

15   28 U.S.C. § 1331 ............................................................................................................ 6

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION**

**I.    INTRODUCTION/SUMMARY OF ARGUMENT**

When plaintiff George Chen, a self-described seasoned and highly accomplished business executive who had numerous years of volunteer work for the agency, joined defendant United Way of the Bay Area ("United Way") as its Senior Vice President and Director, Finance and Administration, he agreed to submit any employment-related dispute to binding arbitration.  Now, in breach of his agreement, plaintiff sues United Way for "libel" arising from the termination of his employment and refuses to arbitrate the claim.

Although plaintiff has asserted that his arbitration agreement is unenforceable, he has not specified why that is so.  United Way is unaware of any valid grounds on which plaintiff may avoid his arbitration agreement.  Certainly plaintiff cannot base his refusal to arbitrate on the theory that the agreement is unenforceable under heightened standards for enforceability of arbitration agreements set forth in *Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 97 (2000).  As *Armendariz* itself states, and numerous cases thereafter have held, the *Armendariz* standards only apply to statutory causes of action or claims for wrongful termination in violation of public policy, and do not apply to a common-law cause of action such as plaintiff's claim for libel.  Here, mindful of those authorities, United Way is not seeking to compel arbitration of plaintiff's First Cause of Action for Wrongful Termination in Violation of Public Policy, only his Second Cause of Action for Libel.[1]  And as to that cause of action, plaintiff's agreement is fully enforceable.  As an applicant for a high-level executive position with United Way with substantial prior business experience, plaintiff did not suffer the inequality of bargaining position that can make an agreement adhesory.  Indeed, plaintiff expressly was invited to propose changes or negotiate additional terms to his arbitration agreement, and he declined to do so.  Thus there was no procedural unconscionability to the agreement.  There also was no substantive unconscionability to the agreement because it clearly set forth the material terms of the parties' agreement to arbitrate and there was nothing surprising or oppressive about those terms.

---

[1]    Where a suit includes both arbitrable and inarbitrable claims, "the arbitrable claims should be severed from those that are inarbitrable and sent to arbitration." *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1088 (1999) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

1    Because plaintiff's Second Cause of Action for Libel is squarely encompassed by his arbitration

2    agreement, that agreement is enforceable, and plaintiff has refused to arbitrate his claim, this motion to

3    compel arbitration of that claim should be granted.

4    **II.    STATEMENT OF FACTS**

5    **A.    Background.**

6    **1.    United Way.**

7    United Way is one of the largest private funders of health and human services in Northern

8    California and philanthropic partner to individuals, businesses, and the non-profit community.  For more

9    than 80 years, United Way has pursued its mission to be the catalyst that enables people to strengthen

10    their communities by investing in one another.  United Way serves Alameda, Contra Costa, Marin,

11    Napa, San Francisco, San Mateo, and Solano Counties.  Declaration of Eric McDonnell in Support of

12    Motion to Compel Arbitration of Plaintiff's Second Cause of Action for Libel ("McDonnell Decl."), ¶ 2.

13    **2.    Plaintiff.**

14    According to his résumé submitted when he sought employment with United Way (McDonnell

15    Decl., ¶ 4, Exh. A), plaintiff had impressive credentials and experience as a seasoned business executive

16    before he joined the agency in 2001.  Plaintiff's résumé shows the following:[2]

17    Plaintiff is a Certified Public Accountant who graduated from the College of William & Mary in

18    1980 with a B.B.A.  Plaintiff worked for more than seven years as an Audit Manager at Arthur Young &

19    Co. in New York and Washington, D.C., where he managed the audits of publicly and privately-held

20    companies, government and non-profit agencies from various industries and services.  He planned and

21    supervised complex audits under tight reporting deadlines, was experienced in Securities and Exchange

22    Commission reporting, and was the Supervisor-in-Charge for the United States Postal Service

23    Headquarters audit engagement.

24    Plaintiff left Arthur Young in 1987 to become the Vice President-Finance & Administration for

25    Cable TV Montgomery in Rockville, Maryland, where he reported to the Chief Executive Officer.  At

26    ---

27    [2]    Of course, since discovery has not yet commenced, United Way does not necessarily admit that
what plaintiff represented on his résumé is true.  However, United Way notes that plaintiff repeats the
essence of his résumé in his complaint (*see* ¶ 6), so plaintiff hardly will contest his credentials when he

28    responds to this motion.

1  Cable TV Montgomery, plaintiff was hired as a senior financial manager to support immediate and

2  critical company turnaround.  He was responsible for all finance and administrative functions, including

3  personnel, insurance, and employee benefits.  Plaintiff organized the entire finance and administrative

4  department and hired all finance personnel.

5       Plaintiff then joined Automated Call Processing Corp. in San Francisco as its Controller and

6  Chief Financial Officer, reporting to the Chief Executive Officer.  At that company, plaintiff was

7  responsible for all finance and administrative functions, including tax, treasury, budgetary, and real

8  estate facilities for the company and its manufacturing subsidiary.  Plaintiff was part of the company's

9  top management team, which was responsible for a company turnaround from a loss of more than $3

10  million to a $2 million profit over a two-year period.

11       Plaintiff left Automated Call Processing Corp. in 1992 to join Kinkosha, Inc., in San Francisco

12  as its General Manager, reporting to the company's owner.  In that position, his last job before joining

13  United Way in 2001, plaintiff was responsible for the full profit and loss of a diversified company.

14  Plaintiff was hired as a senior executive to lead the company's turnaround.  His major accomplishments

15  at Kinkosha included:

16       ▪       Leading the company's turnaround from a loss to an annual profit of $4 million.

17       ▪       Leading the growth in annual revenues from $5 million to $35 million.

18       ▪       Reversed negative cash flow and retired $3 million bank debt.

19       ▪       Achieved cash/working capital surplus of up to $12 million with no debt.

20       ▪       Improved company capitalization from a negative net worth to $17 million.

21       ▪       Negotiated international sources of supply to support sales growth.

22       ▪       Negotiated credit facilities of up to $2.5 million with various banks.

23       ▪       Negotiated major cost reductions from suppliers with no loss in service.

24       ▪       Organized all major departments.  Developed and implemented comprehensive policies

25              and procedures.

26       ▪       Implemented LAN (local area network)-based accounting and financial systems.

27       ▪       Worked directly with the company's owner to expand operations of foreign

28              conglomerate.

LEGAL_US_W # 56507821.5                    -3-         MOTION TO COMPEL ARBITRATION
                                                    U.S.D.C., N.D. Cal., No. C-07-02785-WHA (JCS)

1    In addition to this considerable history of professional accomplishment, plaintiff served for six

2    years as a volunteer member of United Way's Finance Committee.  McDonnell Decl., ¶ 3.  In that role,

3    plaintiff worked closely with United Way executives, learned about the agency's operations, and

4    became closely involved with the agency's finances.  *Id.*

5    **B.     As Part of His Employment Contract, Plaintiff Agreed to Arbitrate Any
              Employment-Related Claims He Might Have Against United Way.**

6

7    In or about April 2001, plaintiff applied for a senior executive position with United Way.

8    McDonnell Decl., ¶ 4.  After his interviews went well, on May 9, 2001, the United Way offered plaintiff

9    the position of Senior Vice President and Director, Finance and Administration, reporting to United Way

10   Chief Executive Officer Anne Wilson.  *Id.*, ¶ 5, Exh. B.  Plaintiff's offer letter contained the following

11   terms pertinent to this motion:

12       The following will confirm our mutual understanding with regard to your employment
         with The United Way of the Bay Area (The United Way).  If you agree that it sets forth
13       our complete understanding, and that nothing of importance has been omitted, please sign
         both copies and return one for our corporate records.  If you believe some important point
14       has been inadvertently omitted, please advise me accordingly so that a new agreement
         can be drafted.  Once executed, this will be the only agreement between you and The
15       United Way and cannot be modified or changed in any way except by written amendment
         to which both parties agree.

16
         We agree to employ you as an exempt management "at-will" employee effective May 16,
17       2001, as Senior Vice President and Director, Finance and Administration, and you agree
         to serve in that capacity....

18
         The annual base compensation for the first year of this agreement is $100,000, plus all
19       applicable employee benefits….

20       Your employment with The United Way can be ended at any time, by The United Way or
         by you, for any reason.  The United Way prides itself on maintaining the highest
21       standards of performance and integrity, and on the ability of its employees at all levels to
         function together as a team.  It also must retain the flexibility to respond immediately to
22       shifting markets and business priorities.  To accomplish these goals without risk of
         expensive and time-consuming litigation, The United Way must disavow any express or
23       implied promises that employment will be for any particular length of time or that
         employment can only be terminated for "good cause," or only for any other reason.

24
         Recognizing that by retaining this valuable right, The United Way may cause disruption
25       and inconvenience for you, and, specifically, in consideration for the execution of a
         "General Release and Covenant Not to Sue" form ("Release"), The United Way agrees
26       that employees who have completed their 180-day probation period and are terminated
         for other than gross insubordination, serious misconduct, or dishonesty, and who agree to
27       sign the Release shall be entitled to a severance package which shall include the
         following:

28

1
2
      Continuation on an "inactive" status, with full salary and medical/dental insurance benefits for a period of up to three months, or a lump sum payment of up to three months salary and continuation of medical/dental insurance benefits for ninety days….

3
4
5
      …In order to provide our employees and The United Way with an inexpensive, swift and fair method for resolving any legal disputes which may arise between them concerning the application or termination of this agreement, The United Way agrees, and by signing this letter you also agree, that binding arbitration before a neutral arbitrator, rather than court litigation, shall be the sole method for resolving disputes.

6
7
8
9
10
11
12
13
      By signing this agreement you agree that any and all disputes or controversies that you may have which arise out of, or as a result of employment hereunder, including claims of discrimination based upon sex, age, national origin, disability, race, or any other basis shall be resolved by final and binding arbitration as the sole and exclusive remedy.  This agreement shall be governed by the Federal Arbitration Act (9 U.S.C. 1, et seq.) and the Arbitration must be initiated by your notice to The United Way within six months of the first occurrence of the events giving rise to the dispute.  Such notice shall be in writing, delivered to the President, and shall contain a statement setting forth the remedy sought and the nature of the dispute, including the specifics of your claim.  The sole neutral arbitrator shall be selected as provided in Rule 12 of the American Arbitration Association Voluntary Labor Arbitration Rules, as amended January 1, 1984. Rules 4-6, 10, 11, 16-24, and 26-46 of those same Rules shall apply to and govern the proceedings. Expenses of the arbitration, other than your attorney's fees, if any, or the expenses of producing witnesses or evidence for you, shall be paid by The United Way up to a maximum amount of $1,000.

14
15
16
      Read this Agreement carefully before signing it, and consult an attorney, if you desire, since it will be the only agreement between us.  If you believe other promises have been made previously, tell us about them before you sign and, if we agree, we will include them.

17 *Id.*, Exh. B.  Plaintiff accepted the offer letter, without seeking changes, on May 16, 2001. *Id.*, ¶ 6.

18
19
20
     **C.**      **Six Years Later, After His Employment with United Way Was Terminated Because of His Abusive Conduct Towards His Staff, Plaintiff Sued United Way for Wrongful Termination in Violation of Public Policy and Libel, and Refused to Abide by His Arbitration Agreement.**

21
22       On August 26, 2006, after an investigation prompted by employee complaints revealed a pattern of abusive conduct towards his staff, United Way dismissed plaintiff.  McDonnell Decl., ¶ 7.

23
24
25
26
27
28       On April 26, 2007, plaintiff brought this action against United Way in San Francisco Superior Court for wrongful termination in violation of public policy (plaintiff alleges that United Way's stated reason for his dismissal was false and that the "real" reason was his objection to financial practices that violated state and federal law) and libel (plaintiff alleges that because he purportedly must repeat the false reason for his discharge to others, United Way is liable for "libel").  Declaration of Jeffrey D. Wohl in Support of Motion to Compel Arbitration of Second Cause of Action for Libel ("Wohl Decl."),

1   ¶ 2, Exh. A.  On May 29, 2007, United Way removed the action to this Court based on federal question

2   jurisdiction, 28 U.S.C. § 1331, due to plaintiff's reliance on at least one, and perhaps two, federal

3   statutes for his public-policy claim that are not duplicated by his reference to state law.[3]

4        After United Way was served with process, it demanded that plaintiff abide by his arbitration

5   agreement and arbitrate at least his libel claim.  Wohl Decl., ¶ 4.  Plaintiff refused to do so, asserting that

6   the arbitration agreement was unenforceable, without specifying why.  *Id*.  This motion followed.

7   **III.   PLAINTIFF'S ARBITRATION AGREEMENT SHOULD BE ENFORCED WITH
        RESPECT TO HIS SECOND CAUSE OF ACTION FOR LIBEL**

8

9        **A.   Both the United States and the State of California Have Strong Policies Favoring
             Enforcement of Arbitration Agreements**

10       Plaintiff's arbitration agreement provides that it is governed by the Federal Arbitration Act

11  ("FAA"), 9 U.S.C. § 1.  The FAA evinces the strong federal interest in arbitration.  As the U.S. Supreme

12  Court has repeatedly ruled, any doubts about the scope of arbitrable issues should be resolved in favor of

13  arbitration.  *E.g.*, *AT&T Techs. Inc.* v. *Communications Workers of Am.*, 475 U.S. 643, 654 (1986)

14  (holding that "in the absence of any express provision excluding a particular grievance from arbitration,

15  we think only the most forceful of evidence of a purpose to exclude the claim from arbitration can

16  prevail."); *Dean Witter Reynolds, Inc.* v. *Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of

17  Congress in passing the [FAA] was to enforce private agreements into which parties had entered, and

18  that concern requires that we rigorously enforce agreements to arbitrate…"); *Moses H. Cone Mem'l*

19  *Hosp.* v. *Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of

20  arbitrable issues should be resolved in favor of arbitration…").

21       In California, arbitration also is the favored method of dispute resolution.  The state's strong

22  public policy in favor of arbitration has been codified by the California Arbitration Act, Cal. Code Civ.

23  Proc. § 1280 *et seq*., which provides that: "*a written [arbitration] agreement...is valid, enforceable and*

24  *irrevocable*, save upon such grounds as exist for the revocation of any contract."  *Id.*, § 1281 (emphasis

25  added).  The Act further provides that where the parties have agreed to arbitrate, but one party refuses,

26

27  [3]    Plaintiff has moved to remand this action to state court; his motion will be heard on August 2,
    2007.  In the interest of efficiency, United Way suggests that the hearing on that motion be postponed by
28  a week so that both the remand motion and this motion to compel may be heard at the same time.

1    upon petition or motion "the court *shall order [the parties] to arbitrate* the controversy" absent grounds

2    for revocation of the entire agreement.  *Id.*, § 1281.2 (emphasis added).

3           California courts repeatedly have declared this state's "'strong public policy in favor of

4    arbitration.'"  *See Brookwood v. Bank of America*, 45 Cal. App. 4th 1667, 1671 (1996) (citation

5    omitted); *see also Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 97 (2000) ("California

6    law, like federal law, favors enforcement of valid arbitration agreements."); *Fire Fighters Union v. City*

7    *of Vallejo*, 12 Cal. 3d 608, 622 (1974) (affirming order compelling arbitration: "Such a result comports

8    with the strong public policy in California favoring...arbitration."); *Doers v. Golden Gate Bridge,*

9    *Highway & Transp. Dist.*, 23 Cal.3d 180, 189 (1979) ("[A]rbitration is a highly favored means of

10   settling such disputes...."); *Dryer v. Los Angeles Rams*, 40 Cal. 3d 406, 417 (1985) (trial court's denial

11   of arbitration "was unwarranted—especially in light of the strong public policy favoring arbitration");

12   *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 642 (1997) (ordering plaintiff to arbitrate

13   his age discrimination claim, stating that "'if there is a rule of thumb regarding contractual arbitration, it

14   is that such arbitration is a highly favored means of dispute resolution'") (citation omitted).

15          Not surprisingly then, California courts routinely enforce, and liberally interpret, arbitration

16   agreements.  The California Court of Appeal in *Vianna v. Doctors' Management Co.*, 27 Cal. App. 4th

17   1186 (1994), explained California's strong public policy in favor of enforcing arbitration agreements:

18          Because California has a strong public policy in favor of arbitration…arbitration
             agreements should be liberally interpreted, and arbitration should be ordered unless the
19          agreement clearly does not apply to the dispute in question....  Doubts as to whether an
             arbitration clause applies to a particular dispute are to be resolved in favor of sending the
20          parties to arbitration.

21   *Id.* at 1189 (internal quotations and citations omitted); *accord Pac. Inv. Co. v. Townsend*, 58 Cal. App.

22   3d 1, 9 (1976) ("Courts should indulge every intendment to give effect to [arbitration] proceedings and

23   order arbitration unless it can be said with assurance that the arbitration clause is not susceptible of an

24   interpretation that covers the asserted dispute.") (citation omitted).  The law in California strongly favors

25   arbitration and requires the enforcement of legitimate, binding arbitration agreements, such as the one

26   entered by plaintiff here.

27   ///

28   ///

1

**B.      Plaintiff's Agreement to Arbitrate Is Enforceable with Respect to His Second Cause of Action for Libel.**

2

3

**1.      Plaintiff's Arbitration Agreement Clearly Encompasses His Second Cause of Action for Libel.**

4      There can be no doubt that plaintiff's arbitration agreement encompasses his Second Cause of

5  Action for Libel and requires the arbitration of that claim.

6      In his Second Cause of Action, plaintiff alleges that United Way "communicated to Plaintiff that

7  he was being terminated for creating a 'hostile environment,'" Wohl Decl., Exh. A (Complaint), ¶ 25;

8  that United Way's "explanation for terminating Plaintiff was false in that Plaintiff did not create a

9  hostile environment and it was intentionally misleading because it falsely implied sexual harassment,

10  using a phrase that is associated with sexual harassment," *id.*, ¶ 26; that United Way "knew at the time

11  of making these statements that the reason given to Plaintiff for termination was false," *id.*, ¶ 27; that "it

12  was reasonably foreseeable that Plaintiff would be forced to republish these false statements in response

13  to questions from prospective employers as to the reason given to him for his termination," *id.*, ¶ 28; and

14  that "during Plaintiff's search for employment, Plaintiff was under a strong compulsion to disclose, and

15  in fact did disclose, to the state employment agency and executive recruiters the false reasons stated by

16  Defendant for his termination," *id.*, ¶ 29.

17      These allegations unmistakably arise from plaintiff's employment with United Way, and

18  therefore plaintiff's agreement to arbitrate "any and all disputes or controversies that you may have

19  which arise out of, or as a result of employment hereunder" clearly encompasses plaintiff's Second

20  Cause of Action for Libel.

21

**2.      Plaintiff's Agreement Includes All of the Essential Components of a Binding Agreement to Arbitrate.**

22

23      There is no dispute that plaintiff's offer letter, once signed by him, constitutes an agreement to

24  arbitrate. In *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal. App. 4th 1276, 1284 (2007), the court

25  explained that because "the right to arbitration depends upon contract; a petition to compel arbitration is

26  simply a suit in equity seeking specific performance of that contract." Therefore, "only generally

27  applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate

28  arbitration agreements...." *Id.* at 1285; *see also Boghos v. Certain Underwriters at Lloyd's of London*,

1    36 Cal. 4th 495 (2005) ("When a party to an arbitration agreement challenges the agreement as

2    unenforceable, we decide the issue based on the same state law standards that *apply to contracts*

3    *generally*.  The...[FAA] creates a presumption in favor of arbitrability and permits courts to refuse to

4    enforce agreements to arbitrate only "upon such grounds as exist at law or in equity for the revocation of

5    any contract."  Similarly,...[the California Code of Civil Procedure § 1280 *et seq*.] expresses a strong

6    public policy favoring the enforcement of valid agreements to arbitrate.").

7          Plaintiff cannot establish any of the general defenses to enforceability here.  First, he cannot

8    show that he entered into the agreement under duress or under fraudulent circumstances.  The agreement

9    merely reflects an offer of employment that plaintiff was free to accept or reject.

10         Second, the agreement cannot be invalidated as "unconscionable."  To succeed on such a theory,

11   plaintiff must show that the agreement is *both* procedurally *and* substantively unconscionable.  *Am.*

12   *Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996) ("California courts generally require a showing

13   of both procedural and substantive unconscionability at the time the contract was made.").  Plaintiff

14   cannot make the required showing as to either element.

15                    **a.       There Was No Procedural Unconscionability Here.**

16         Procedural unconscionability is generally found in contracts of adhesion: those contracts where a

17   weaker party is presented with a contract on a "take-it-or-leave-it" basis, with no meaningful

18   opportunity to opt-out.  *See, e.g., Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100 (2002); *see also*

19   *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (applying California law,

20   and finding arbitration agreement not procedurally unconscionable where employee was given

21   opportunity to opt out).

22         Here, there is no "take-it-or-leave-it" contract.  Plaintiff's agreement with United Way expressly

23   provided, at the outset of the letter, the opportunity to seek modification of its provisions:

24         If you agree that [the Agreement] sets forth our complete understanding, and that nothing
           of any importance has been omitted, please sign both copies.... ***If you believe some***
25         ***important point has been inadvertently omitted, please advise me accordingly so that a***
           ***new agreement can be drafted***.
26

27   McDonnell Decl. ¶ 4, Exh. A (emphasis added).  The agreement later repeated the invitation to seek

28   modification of its terms:

LEGAL_US_W # 56507821.5                          -9-              MOTION TO COMPEL ARBITRATION
                                                                  U.S.D.C., N.D. Cal., No. C-07-02785-WHA (JCS)

1    ***If you believe other promises have been made previously, tell us about them before you
2    sign and, if we agree, we will include them.***

3    *Id.* (emphasis added).  The agreement even advised plaintiff to seek the advice of an attorney before

4    accepting it:

5    ***Read this Agreement carefully before signing it, and consult an attorney, if you desire,
     since it will be the only agreement between us.***

6

7    *Id.* (emphasis supplied).

8         Moreover, there was no weaker party; this quite obviously was no one-sided transaction in which

9    a powerful company imposes one-sided terms on a vulnerable and isolated employee.  Before joining

10   United Way, plaintiff, according to his own résumé, was a seasoned high-level executive who had been

11   responsible for multi-million dollar turnarounds at two companies; negotiated $2.5 million credit

12   facilities, major cost reductions from suppliers with no loss in service, and international sources of

13   supply to support sales growth; and run finance and administrative departments, including creating and

14   implementing their policies and hiring staff.  He also had significant experience at United Way before

15   joining its employ, serving on its Finance Committee in a volunteer capacity for six years during which

16   time he got to know United Way executives and learn a lot about its operations and finances.  He was

17   offered a senior position at United Way in which he would report to its Chief Executive Officer, make

18   more than $100,000 in salary and benefits, and receive a guaranteed severance of up to three months if

19   he were fired for reasons other than serious offenses.  This was the essence of an arms-length

20   transaction, which is the antithesis of procedural unconscionability.  *See Cleveland v. Oracle Corp.*,

21   2007 WL 915414, *8 (N.D. Cal. 2007) (Patel, J.) (upholding arbitration agreement against claim of

22   procedural unconscionability) ("Here, the contract at issue was a Senior Executive Retention Benefit

23   Plan, offered by a company to its senior executives in order to persuade them to remain with the

24   company. This was not a standard form employment, loan or consumer contract, which are often one-

25   sided. Although the terms of the Plan were pre-drafted, the executives were sophisticated

26   businesspersons with ample professional opportunities. In other words, if plaintiffs had decided to reject

27   the terms of the Plan, they likely would have had little trouble finding comparable positions elsewhere.

28   Indeed, the company's desire to prevent this from happening was the impetus behind offering the Plan in

1   the first place. Plaintiffs' continued employment was not conditioned upon accepting the terms of the

2   Plan. In sum, the relative strength of plaintiffs and defendants dissuades this court from finding

3   procedural unconscionability based on oppression.").

4          Finally, procedural unconscionability "requires an inequality in bargaining power *accompanied*

5   *by* lack of disclosure of material provisions." *Robison v. City of Manteca*, 78 Cal. App. 4th 452, 459

6   (2000) (emphasis added). Here, there was no lack of disclosure. The material term at issue—namely,

7   the agreement to arbitrate—is contained in the agreement itself. *See Cleveland,* 2007 WL 915414 at *9

8   ("Here, the arbitration provision is clearly set forth in the contract, not hidden in a printed form.

9   Furthermore, although plaintiffs claim that they were surprised that the arbitration provision limited their

10  rights under ERISA, plaintiffs cite no authority suggesting that failure to comprehend the legal

11  ramifications of a contract constitutes 'surprise' for the purposes of unconscionability where the terms

12  themselves are clearly set forth. Plaintiff's purported surprise in this regard stems from their ignorance of

13  ERISA, not from anything truly hidden in the contract. Accordingly, the Plan is not procedurally

14  unconscionable.").

15         Because plaintiff cannot establish *procedural* unconscionability, he cannot establish the

16  unconscionability defense at all with respect to his Second Cause of Action for Libel.

17                    **b.        There Also Is No Substantive Unconscionability Here.**

18          Even if plaintiff somehow could show procedural unconscionability, he still cannot show that

19  the agreement was *substantively* unconscionable. Substantive unconscionability requires a finding by

20  the court that the agreement's provisions are so overly harsh as to "shock the conscience." *See Am.*

21  *Software Inc.*, 46 Cal. App. 4th 1386, 1391 (1996) ("With a concept as nebulous as 'unconscionability'

22  it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms

23  that the parties have agreed to merely because the court believes the terms are unreasonable. The terms

24  must shock the conscience."); *see also Kinney v. United HealthCare Services, Inc.*, 70 Cal. App. 4th

25  1322, 1330 (1999) (contract is substantively unconscionable only where its terms are "so one-sided as to

26  shock the conscience").

27         There is nothing "shockingly unconscionable" about an agreement to arbitrate disputes with an

28  employer. As explained above in section III.A., *supra*, the public policy of the United States and that of

LEGAL_US_W # 56507821.5                      -11-              MOTION TO COMPEL ARBITRATION
                                                              U.S.D.C., N.D. Cal., No. C-07-02785-WHA (JCS)

1 the State of California both favor arbitration, and agreements to arbitrate are routinely enforced by the

2 courts.  Moreover, the arbitration agreement at issue here contains protections that ensure a fair forum

3 for the resolution of claims in arbitration.  Under the agreement, the American Arbitration Association

4 rules govern the proceedings; they provide for, *inter alia*, a neutral arbitrator, subpoenas of witnesses

5 and documents, and a written award.  Wohl Decl., ¶ 3, Exh. B.  Additionally, the agreement provides

6 that the United Way will pay for the expenses of arbitration, up to $1,000.  *Id*.

7 For all these reasons, plaintiff cannot establish any defense to enforceability of the agreement

8 and his libel claim must be compelled into arbitration.

9 **3.    The Heightened *Armendariz* Standards Do Not Apply Here.**

10 Although prior to this motion plaintiff did not explain why his arbitration agreement would not

11 be enforceable with respect to his Second Cause of Action for Libel, United Way anticipates that in

12 response to this motion, plaintiff will argue that arbitration of his libel claim may not be compelled here

13 because not all the procedural safeguards articulated in *Armendariz* are present in his arbitration

14 agreement.[4]  The *Armendariz* protections, however, apply only to a narrow range of claims—founded on

15 statute or public policy—and do not extend to common law claims such as libel.  In *Boghos v. Certain*

16 *Underwriters at Lloyd's of London*, 36 Cal. 4th 495, 506 (2005), the California Supreme Court held that

17 *Armendariz* applies only to claims brought under the Fair Employment and Housing Act ("FEHA"),

18 Title VII of the Civil Rights Act of 1964 ("Title VII"), and those alleging wrongful termination or

19 retaliation in violation of public policy ("*Tameny* claims"):

20 > In *Armendariz, supra*,  ... we set out the conditions under which an employer can lawfully
> require its employees to arbitrate claims arising under the [FEHA].  Through the FEHA,
21 > we reasoned, the Legislature created substantive and procedural rights not just for the

22

---

[4]    Under *Armendariz's* heightened standards, an agreement to arbitrate is enforceable only if it
23 provides for mutuality, a neutral arbitrator, more than minimal discovery, a written award, and all of the
types of relief that would otherwise be available in court and does not require employees to pay either
24 unreasonable costs, fees or expenses as a condition of access to the arbitration forum.  *See Armendariz v.*
*Found. Health Psychcare Servs*., 24 Cal. 4th 83, 101-03 (2000).  Here, the *Armendariz* elements missing
25 from plaintiff's arbitration agreement are (1) full relief from arbitration fees in excess of court fees
(although the agreement does impose the first $1,000 in arbitration fees upon United Way); (2) a
26 limitations period for a claim asserted in arbitration that matches the legal statute of limitations
applicable to the claim (here, plaintiff was required to give United Way notice of his claim within six
27 months after the occurrence of the events giving rise to the claim); and (3) the explicit right to take
discovery (although the agreement does incorporate the Labor Arbitration Rules which provide for
28 subpoenas of documents and witnesses).

1  benefit of individuals but also for public purposes; accordingly, those statutory rights are
2  unwaivable....  We borrowed these requirements from an analogous federal decision,
   *Cole*, which had in turn formulated them to ensure that employer-mandated arbitration
3  agreements did not violate [Title VII].

                                           * * *

4
   In *Little, supra*, we extended *Armendariz, supra*, and applied its requirements to
5  employer-mandated arbitration of tort claims for wrongful discharge in violation of
   public policy (i.e., claims under *Tameny v. Atlantic Richfield Co. ...*  Justifying the
6  extension, we reasoned that *Tameny* claims, even though not statutory, are nevertheless
   "almost by definition unwaivable" because they seek to enforce public policies that are
7  carefully tethered to fundamental policies delineated in constitutional or statutory
   provisions.

8

9  *Id.* at 506.  The *Boghos* court further held that *Armendariz* has *not* been extended to "common law

10 claims generally." *Id.*  Other cases are in accord.  *E.g., Independent Assn. of Mailbox Center Owners

11 *Inc. v. Sup. Ct.*, 133 Cal. App. 4th 396, 416 (2005) (holding that *Armendariz* safeguards do not apply to

12 claims for defamation); *Giuliano v. Inland Empire Personnel, Inc.*, 149 Cal. App. 4th 1276, 1290 (2007)

13 (holding that heightened *Armendariz* standard is inapplicable to contract claim for bonus and severance);

14 *Parker v. McCaw*, 125 Cal. App. 4th 1494, 1507 (2005) (refusing to apply heightened *Armendariz*

15 standard to non-FEHA claims).

16      Because plaintiff's Second Cause of Action for Libel is a common law claim, it is not subject to

17 the heightened procedural requirements of *Armendariz*.  Accordingly, plaintiff's agreement to arbitrate

18 should be enforced with respect to that cause of action.

19 **IV.    CONCLUSION**

20      For the foregoing reasons, the Court should adhere to the "strong public policy" favoring

21 arbitration and grant United Way's motion to compel arbitration of plaintiff's Second Cause of Action

22 for Libel.

23      Dated: July 5, 2007.          JEFFREY D. WOHL
                                      LAURA MONFREDINI
24                                    JEFFREY P. MICHALOWSKI
                                      PAUL, HASTINGS, JANOFSKY & WALKER LLP
25

26                                    By: /s/ Jeffrey D. Wohl
                                      _____
                                                  Jeffrey D. Wohl
27                                          Attorneys for Defendant
                                          United Way of the Bay Area
28