JEFFREY D. WOHL (Cal. State Bar No. 96838)
LAURA N. MONFREDINI (Cal. State Bar No. 221153)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
lauramonfredini@paulhastings.com
jeffmichalowski@paulhastings.com

Attorneys for Defendant
United Way of the Bay Area

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CHEN,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED WAY OF THE BAY AREA, and DOES 1-10 inclusive,<br><br>Defendants. | No. C-07-02785-WHA (JCS)<br><br>**DEFENDANT UNITED WAY OF THE BAY AREA'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**<br><br>Date: August 2, 2007<br>Time: 8:00 a.m.<br>Courtroom: 9, 19th Floor<br>Judge: Hon. William H. Alsup<br><br>Complaint filed: April 26, 2007<br>Trial Date: None set yet |

# TABLE OF CONTENTS

*Page*


Table of Authorities .......... ii

I. INTRODUCTION/SUMMARY OF ARGUMENT .......... 1

II. PLAINTIFF'S FIRST CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY IS BASED, IN MATERIAL PART, ON AN ALLEGED VIOLATION OF FEDERAL LAW .......... 2

- A. Plaintiff's Factual Allegations .......... 2
- B. The Legal Bases for Plaintiff's Claims .......... 3

III. THIS COURT HAS FEDERAL-QUESTION JURISDICTION OVER PLAINTIFF'S FIRST CAUSE OF ACTION BECAUSE SUBSTANTIAL AND DISPUTED QUESTIONS OF FEDERAL LAW ARE NECESSARY ELEMENTS OF HIS CLAIM .......... 4

- A. Where a Substantial and Disputed Question of Federal Law Is a Necessary Element of a State Law Claim, Federal Question Jurisdiction Exists .......... 4
- B. The LMRA and NLRA Federal Questions Are Necessary to Resolve Plaintiff's First Cause of Action .......... 5
- C. The Federal Questions At Issue Here Are Both Disputed and Substantial .......... 10

IV. The Court Has Supplemental Jurisdiction Over the Remainder of Plaintiff's Complaint .......... 12

V. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Ayres v. General Motors Corp.*, 234 F.3d 514 (11th Cir. 2000) ..... 11

*Battle v. Seibels Bruce Insurance Co.*, 288 F.3d 596 (4th Cir. 2002) ..... 11

*Brennan v. Southwest Airlines*, 134 F.3d 1405 (9th Cir. 2004) ..... 5

*Broder v. Cablevision System Corp.*, 418 F.3d 187 (2d Cir. 2005) ..... 8, 9, 11

*Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050 (9th Cir. 1997) ..... 11

*Campbell v. Aerospace Corporation*, 123 F.3d 1308 (9th Cir. 1997) ..... 11

*Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) ..... 7, 8

*In re Circular Thermostat*, 2005 WL. 2043022 (N.D. Cal. Aug. 24, 2005) ..... 9

*Duncan v. Al Stuetzle*, 76 F.3d 1480 (9th Cir. 1996) ..... 6

*Eastman v. Marine Mechanical Corp.*, 438 F.3d 544 (6th Cir. 2006) ..... 11

*Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 (1983) ..... 1, 4, 5

*Grable & Sons Metal Products, Inc.*, 545 U.S. 308 (2005) ..... 5, 10, 11, 12

*Gully v. First National Bank in Meridian*, 299 U.S. 109 (1936) ..... 10

*Lim v. Prudential Ins. Co. of Am.*, 36 Fed. Appx. 267 (9th Cir. 2002) ..... 6

*Lippitt v. Raymond James Finance Services*, 340 F.3d 1033 (9th Cir. 2003) ..... 4

*Nat'l Credit Reporting Ass'n v. Experian Information Solutions*, 2004 U.S. Dist. LEXIS 17303 (N.D. Cal., July 21, 2004) ..... 5, 9

**TABLE OF AUTHORITIES**
(*cont'd*)

*Page*

*People ex rel. Lockyer v. Dynegy Power Marketing*, 375 F.3d 831 (9th Cir. 2004) ..... 5

*Precision Pay Phones v. Qwest Committee Corp.*, 210 F. Supp. 2d 1106 (N.D. Cal. 2002) ..... 5

*Rains v. Criterion Systems, Inc.*, 80 F.3d 339 (9th Cir. 1996) ..... 6

*Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252 (1964) ..... 9, 11

*U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002) ..... 11

*Ultramar America Limited v. Dwelle*, 900 F.2d 1412 (9th Cir. 1990) ..... 6

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ..... 12

*Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1998) ..... 7

**Statutes**

Cal. Corp. Code
§ 6812 ..... 1, 6, 7

Fed. R. Civ. Proc.
§ 8(a) ..... 9

L.M.R.A.
§ 302(a) ..... 1, 3

N.L.R.A.
§ 8(a)(2); (b)(6) ..... 4

28 U.S.C.
§ 1367(a) ..... 12

29 U.S.C.
§ 158(a)(2); (b)(6) ..... 4
§ 186(a) ..... 1, 3

## TABLE OF AUTHORITIES
(*cont'd*)

*Page*

**Miscellaneous**

Charles E. Clark,
*Cases on Pleading and Procedure* 658 (1940) .............................................................. 9

"The Code Cause of Action,"
33 YALE L.J. 817, 820, 823 (1933) .............................................................................. 9

## I. INTRODUCTION/SUMMARY OF ARGUMENT

This case was removed to federal court because plaintiff George Chen's First Cause of Action for Wrongful Termination in Violation of Public Policy includes as one of its necessary elements substantial and disputed federal questions: Whether plaintiff was terminated by defendant United Way of the Bay Area ("United Way") in retaliation for his alleged objection to payments by United Way to union officials in violation of section 302(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(a), or sections 8(a)(2) and 8(b)(6) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §§ 158(a)(2), (b)(6). When a state-law cause of action raises a necessary, substantial, and disputed federal question, a federal court has jurisdiction over the claim. *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983).

On his motion to remand, plaintiff argues that this case should be sent back to state court because the federal questions his First Cause of Action raises are not necessary or substantial. Plaintiff is wrong.

**The federal questions are necessary.** Plaintiff contends that deciding the federal questions is unnecessary because in his First Cause of Action he also relies on California Corporations Code section 6812 as a source of public policy that he contends United Way violated in terminating his employment. But section 6812 has nothing to do with payments to union officials—it only governs corporate financial reporting—and plaintiff's reliance on section 6812 pertains to separate and distinct factual allegations in his First Cause of Action that he was wrongfully fired for objecting to United Way's financial-reporting practices. In the cases that plaintiff cites where the courts found no removal jurisdiction, there existed both state and federal laws governing the same alleged conduct—for example, the California Fair Employment and Housing Act and Title VII of the Civil Rights Act of 1964, both of which prohibit race discrimination in employment—and therefore resolution of the federal question was unnecessary because the plaintiff's claim could be resolved solely by reference to state law. That is not true here: The Court cannot decide whether plaintiff was fired for objecting to payments to union officials without necessarily resolving the separate and unique federal questions those allegations present.

Moreover, plaintiff cannot evade removal by combining in a single cause of action two distinct claims: a claim of retaliation for objecting to financial-reporting practices, and a claim of retaliation for objecting to payments to union officials. For removal purposes, the Court may and should disregard

plaintiff's pleading style and recognize the latter claim for what it is, a separate and distinct claim that necessarily turns on the interpretation of federal labor law.

**The federal questions are substantial.** As for the second prong of the test—whether the federal question is substantial and disputed—United Way easily meets that standard. To decide plaintiff's First Cause of Action, the Court will need to decide the scope of LMRA section 302(a) and NLRA sections 8(a)(2) and 8(b)(6): Do they, or do they not, apply to payments by an agency to union officials that do not have the purpose or effect of influencing union organizing or collective-bargaining activities? (Plaintiff fails to allege any such intent or effect, and appears to contend that an agency's payments to union officials absent a *bona fide* employment relationship are *per se* violations of federal labor law.) These are significant federal-law questions about which the parties disagree, and that are appropriate for federal court resolution.

Because United Way meets the *Franchise Tax Board* test for removal jurisdiction in all respects, plaintiff's motion to remand should be denied.

## II. PLAINTIFF'S FIRST CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY IS BASED, IN MATERIAL PART, ON AN ALLEGED VIOLATION OF FEDERAL LAW

Plaintiff's complaint in this action asserts two causes of action: a First Cause of Action for Wrongful Termination in Violation of Public Policy and a Second Cause of Action for Libel. Both arise from the termination of plaintiff's employment by United Way.

### A. Plaintiff's Factual Allegations.

In support of his First Cause of Action, plaintiff alleges the following:

- Plaintiff was employed by United Way beginning on or about May 16, 2001, as its Chief Financial Officer. Cmplt., ¶ 7.
- In the course of his employment with United Way, plaintiff identified "serious instances of negligence" in United Way management. Cmplt., ¶ 9.
- Plaintiff also identified "numerous instances of improper financial management and reporting" and he "refused to sign off on UWBA's financial statements until" the statements were accurate. Cmplt., ¶¶ 10, 12.
- "Plaintiff identified to UWBA management payments to union officials that were improper uses of UWBA funds. In particular, UWBA made payments to and for the benefit of purported employees who performed no actual work for UWBA. When Plaintiff pointed out this practice to UWBA management, UWBA management

responded by attempting to create job descriptions for these individuals in order to make a false record of services performed by them." Cmplt., ¶ 11.

- "[In July 2006], Plaintiff approached the labor representatives about reducing clearly improper payments for rent for union officials at offices at union headquarters. Such payments are unlawful under the Labor Management Relations Act." Cmplt., ¶ 15.
- On August 26, 2006, [plaintiff] was terminated on the basis that he had created a 'hostile work environment' because 'people were intimidated.'" Cmplt., ¶ 16.
- The true reason for [plaintiff's] termination was his refusal to allow or sign off on improper financial reporting and his questioning of financial practices that were improper or unlawful. Cmplt., ¶ 17.

**B. The Legal Bases for Plaintiff's Claims.**

In his complaint, plaintiff alleges that his termination violated the public policies of both the State of California and the United States:

- "It is the public policy of California provided for in California Corporations Code § 6812 and elsewhere that charitable non-profit corporations engage in accurate financial reporting and that they handle donor's funds with care and in a manner calculated to achieve the best use of donor's funds. Officers and directors are charged with ensuring that financial reports regarding the financial condition of the corporation are not willfully false or exaggerated in order to induce contributions." Cmplt., ¶ 19.
- "It is the public policy of the United States of America that no employer or other person provide payments to union or union officials except payments for services rendered as an employee." Cmplt., ¶ 20.
- "Plaintiff was terminated because he insisted on actions that complied with the public policies provided for in paragraph 19 above and because he opposed actions that violated the public policy provided in paragraph 20 above." Cmplt., ¶ 21.
- "The actions complained of constitute termination in violation of the Public Policy of the State of California." Cmplt., ¶ 22.

In his motion for remand, plaintiff says that the public policy of the United States at issue is based on LMRA section 302(a), 29 U.S.C. § 186(a). Mtn. for Remand at 7-8. Section 302(a) provides, in relevant part:

> (a) Payment or lending, etc., of money by employer or agent to employees, representatives, or labor organizations.
>
> It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—
>
> (1) to any representative of any of his employees who are employed in an industry affecting commerce; or

> (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or
>
> (3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or
>
> (4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

Although disclaimed by plaintiff, his allegations also implicate NLRA sections 8(a)(2) and 8(b)(6), 29 U.S.C. §§ 158(a)(2), (b)(6), which make it an unfair labor practice for an employer to, *inter alia*, "contribute financial or other support" to any labor organization, and for a labor organization or its agents "to cause or attempt to cause an employer to pay or deliver or agree to pay or deliver any money or thing of value, in the nature of an extraction, for services which are not performed or not to be performed."[1]

## III. THIS COURT HAS FEDERAL-QUESTION JURISDICTION OVER PLAINTIFF'S FIRST CAUSE OF ACTION BECAUSE SUBSTANTIAL AND DISPUTED QUESTIONS OF FEDERAL LAW ARE NECESSARY ELEMENTS OF HIS CLAIM

### A. Where a Substantial and Disputed Question of Federal Law Is a Necessary Element of a State Law Claim, Federal Question Jurisdiction Exists.

Under the artful pleading doctrine, a plaintiff may not avoid federal jurisdiction simply by casting in state law terms a claim that actually is based on federal law. *See Franchise Tax Bd. of Cal. V. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983). As the Ninth Circuit stated, "the artful pleading doctrine allows courts to 'delve beyond the face of the state complaint and find federal question jurisdiction' by 'recharacterizing a plaintiff's state law claim as a federal claim.'" *Lippitt v. Raymond*

---

[1] Plaintiff contends that NLRA sections 8(a)(2) and 8(b)(6) are inapplicable because he does not allege that the payments were made by United Way to the union itself, rather than to union officials. That claimed distinction finds no support in the case law and, in any event, will require further factual development to assess.

*James Fin. Servs.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (quoting *Precision Pay Phones v. Qwest Comm. Corp.*, 210 F. Supp. 2nd 1106, 1112, 1113 (N.D. Cal. 2002)).

The federal courts will recharacterize a plaintiff's state law claim as a federal claim where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 9 (1983). If a "substantial, disputed question of federal law is a necessary element" of a state law claim, the federal courts have jurisdiction. *Id.*, at 13.

For example, in *Grable & Sons Metal Products, Inc.*, 545 U.S. 308, 314-15 (2005), the Supreme Court held that federal jurisdiction existed over a state-law cause of action to quiet title to real property, on the grounds that an "essential element" of the claim was whether the IRS failed to give adequate notice of seizure of property, as defined by federal law. The Ninth Circuit and California district courts are in accord. *See, e.g., Brennan v. Southwest Airlines*, 134 F.3d 1405, 1409 (9th Cir. 2004) (removal jurisdiction upheld when California Business and Professions Code section 17200 claim rested on interpretation of federal tax code); *People ex rel. Lockyer v. Dynegy Power Marketing*, 375 F.3d 831, 838 (9th Cir. 2004) (removal jurisdiction upheld for section 17200 claim which turned upon defendant's compliance with federal energy regulation); *Nat'l Credit Reporting Ass'n v. Experian Information Solutions*, No. C-04-01661-WHA, U.S. Dist. LEXIS 17303, at *10 (N.D. Cal., July 21, 2004) (Alsup, J.) (section 17200 claim which was predicated on violation of federal antitrust claim held removable to federal court: "even if Section 17200 provides for a separate remedy for a violation of the borrowed federal law, the 'unlawful' prong of Section 17200 necessarily requires a determination that the borrowed federal law was violated").

### B. The LMRA and NLRA Federal Questions Are Necessary to Resolve Plaintiff's First Cause of Action.

Here, plaintiff alleges that he was fired by United Way for opposing payments by the agency to union officials which, he contends, violated federal labor law. Cmplt., ¶¶ 11, 15, 17. This, he alleges, constituted a wrongful termination in violation of public policy. In order to decide whether plaintiff has a valid claim, the Court necessarily must decide whether, in fact, United Way's payments violated

LMRA section 302(a) or NLRA sections 8(a)(2) or 8(b)(6).[2] That makes the federal questions presented necessary to resolving plaintiff's First Cause of Action. In his motion to remand, plaintiff argues that the federal questions his complaint raises are not necessary to resolving his First Cause of Action because that count also relies on California Corporations Code section 6812. However, that statute only governs financial reporting by corporations; it does not regulate payments to union officials.[3] Thus, section 6812 does not apply to plaintiff's allegations that he was fired for objecting to United Way's payments to union officials; it relates only to his allegations that he was fired for objecting to United Way's alleged inaccurate financial reports. *See* Cmplt., ¶¶ 10, 12, 17, 19. The Court therefore cannot adjudicate plaintiff's claim that he was fired for opposing payments to union officials based on section 6812; it will have to decide separately whether the payments violated LMRA section 302(a) and NLRA section 8(a)(2) and 8(b)(6).

Thus, numerous cases cited by plaintiff in which there was both a state and a federal statutory basis for the public policy at issue are inapplicable here, because the courts in those cases could fully adjudicate the plaintiffs' claims without resort to federal law. *See Rains v. Criterion Systems, Inc.*, 80 F. 3d 339 (9th Cir. 1996) ("Although the complaint refers to Title VII as one basis…the complaint also refers to the [California] Constitution and to the CFEHA, both of which prohibit employment discrimination…"); *Ultramar America Limited v. Dwelle*, 900 F.2d 1412 (9th Cir. 1990) (purported wrongful conduct of misrepresentation as to compliance with "environmental laws" could be grounded in violations of federal or state law); *Duncan v. Al Stuetzle*, 76 F.3d 1480 (9th Cir. 1996) (finding, for

---

[2] California state law recognizes a claim of wrongful termination in violation of public policy where termination of employment occurs in violation of a fundamental state policy, but requires that the public policy in question be "carefully tethered to fundamental policies that are delineated in constitutional or statutory provisions." *Lim v. Prudential Ins. Co. of Am.*, 36 Fed. Appx. 267, 269 (9th Cir. 2002). Accordingly, to move forward with his public-policy wrongful-termination claim, plaintiff will need to ask this Court to interpret the statutory provisions that apply to his claim, namely, LMRA section 302(a) or NLRA sections 8(a)(2) or 8(b)(6).

[3] Section 6812(a) states:

> Every director or officer of any corporation is guilty of a crime if such director or officer knowingly concurs in making or publishing, either generally or privately, to members or other persons (1) any materially false report or statement as to the financial condition of the corporation, or (2) any willfully or fraudulently exaggerated report, account or statement of operations or financial condition, intended to induce and having a tendency to induce, contributions or donations to the corporation by members or other persons.

each course of wrongful conduct—misappropriation of proprietary information, unfair competition, and civil conspiracy—independent state law basis); *Willy v. Coastal Corp.*, 855 F.2d 1160 (5th Cir. 1998) (claims relied on both state and federal environmental laws). If California Corporations Code section 6812 also prohibited United Way's payments to union officials as plaintiff contends LMRA section 302(a) does, then plaintiff could correctly rely on this line of cases to avoid removal. However, section 6812 does not do so, and therefore all these cases are inapplicable.

Plaintiff also relies on *Christianson v. Colt Industries Operating Corp.,* 486 U.S. 800 (1988), in which the Supreme Court rejected federal patent jurisdiction over a suit that raised issues of patent law. However, plaintiff misconstrues the actual holding in *Christianson*. There, the Court ruled that federal patent jurisdiction did not exist over the plaintiffs' claims because they could be decided *in full* without necessarily reaching the patent issues they raised. That is not the case here with respect to plaintiff's claim that he was fired in retaliation for opposing United Way's payments to union officials; the Court will have to decide whether those payments violated federal labor law.

In *Christianson*, the Court examined whether a claim for federal antitrust violations "arose under" the patent laws.[4] The plaintiffs (the petitioners before the Supreme Court) alleged that the defendant, Colt Industries (a gun maker), violated sections 1 and 2 of the Sherman Act by reaching an agreement with the plaintiffs' suppliers and customers to refrain from transacting business with them. Colt argued that federal patent jurisdiction existed over the claims because at issue was whether Colt's trade secrets constituted enforceable patents; depending on the resolution of that issue, Colt argued, the petitioners' allegations could succeed or fail. The Court disagreed with that argument, reasoning that the validity of the patents was not necessarily at issue because the plaintiffs could pursue relief on the alternative theories that Colt had given them permission to use its trade secrets or otherwise engaged in deceitful behavior about the trade secrets:

> [P]etitioners might have attempted to prove that Colt's accusations of trade-secret infringement were false not because Colt had no trade secrets, but because Colt authorized petitioners to use them…. *[M]ost of the conduct alleged in the complaint could be deemed wrongful quite apart from the truth or falsity of Colt's accusations.* According to the complaint, Colt's letters also (contained "copies of inapplicable court

[4] The *Christianson* Court held that the "arising under" test for federal patent jurisdiction is substantially the same as the "arising under" test for federal question jurisdiction. 486 U.S. at 808.

> orders" and "suggested that these court orders prohibited the recipients from doing business with" petitioners; and (2) "falsely stated that 'Colt's right' to proprietary data had been 'consistently upheld in various courts.'' Similarly the complaint alleges that Colt's lawsuit against petitioners (1) was designed "to contravene the permission previously given"; (2) was "pursued…in bad faith by subjecting [petitioners] to substantial expense in extended discovery procedures"; and (3) was brought only to enable Colt "to urge customers and potential customers of petitioners to refrain from doing business with them."

*Id.* at 811-12 (emphasis added). Thus, a court could completely resolve the plaintiffs' claims of antitrust violations—including all of their allegations of wrongdoing by Colt—without ever addressing whether the Colt patents were valid. For that reason, and that reason only, the Supreme Court found patent jurisdiction lacking.

Here, in sharp contrast, although the Court certainly could adjudicate plaintiff's claim that he was fired for opposing United Way's financial-reporting practices without ever considering LMRA section 302(a) or NLRA section 8(a)(2) or 8(b)(6), it could not resolve plaintiff's other claim—that he was fired for opposing United Way's payments to union officials—without first deciding the LMRA section 302(a) and NLRA 8(a)(2) and 8(b)(6) questions presented. Unlike the plaintiffs' claims in *Christianson*, complete adjudication of plaintiff's First Cause of Action without consideration of the federal questions raises is just not possible. The conduct alleged in plaintiff's First Cause of Action *cannot* "be deemed wrongful quite apart from the truth or falsity of" plaintiff's assertions regarding improper payments. *Christianson*, 486 U.S. at 812.

Nor can plaintiff escape the force of this argument by noting that he has asserted a single cause of action for wrongful termination in violation of public policy, and therefore the state-law part of his cause of action overrides the federal-law part of his cause of action for purposes of jurisdiction. Courts recognize that it is the substance of a claim, not how it is organized, that controls for jurisdictional purposes. *See, e.g.*, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187 (2d Cir. 2005) (what plaintiff called single "breach of contract" count actually consisted of two distinct claims (1) breach of provision of federal law, incorporated by reference into contract, by failing to provide plaintiffs with uniform cable rates; and (2) breach of provision of state law, also incorporated by reference, by failing to provide plaintiff with notice of rate changes, reasoning that they were logically separable from one another). Here, the two claims raised in plaintiff's First Cause of Action are "logically separable"—they rest on

distinct factual backgrounds and legal premises: one on allegations of improper financial reporting in violation of state corporations law, the other on allegations of improper payments in violation of federal labor law. They thus constitute independent claims for purposes of the *Christianson* analysis.[5]

Indeed, this very Court has recognized that pleading alternative theories—some sounding in federal law, some not—does not preclude a finding of federal question jurisdiction. In *Nat'l Credit Reporting Ass'n, Inc. v. Experian Information Solutions, Inc.*, 2004 U.S. Dist. LEXIS 17303 (N.D. Cal. July 21, 2004) (Alsup, J.), this Court considered federal jurisdiction over a single cause of action brought under California Business and Professions Code section 17200 based on three separate and distinct theories: (1) unlawful business practices; (2) unfair business practices; and (3) fraudulent or deceptive business practices. *Id.*, *7-8. This Court held that because the only laws supporting the first theory—unlawful business practices—were the federal antitrust laws, the claim as a whole arose under federal law, even though the plaintiff's alternative theories of unfair business practices and fraudulent or deceptive business practices did not depend on federal antitrust law or, for that matter, any other federal law. *Id.*, *8-9 The Court did not find, as plaintiff would have it read *Christianson*, that the presence of alternative, non-federal theories of relief supporting the same cause of action serves as an automatic bar to the federal courts. Instead, this Court sensibly recognized that the complaint in question raised an issue of federal antitrust law which was better decided by the federal courts. *Id.*, *5-18.[6]

---

5 Plaintiff makes far too much of the terms "theory," "claim," and "cause of action"; the distinction between these terms is blurry at best. *See* Charles E. Clark, "The Code Cause of Action," 33 YALE L.J. 817, 820, 823 (1933) (noting that "the definitions of [cause of action] by text writers and courts have been numerous and discordant;" and defining "cause of action" not in formalistic terms, but instead as "an aggregate of operative facts which give rise to one or more relations of right-duty between two or more persons… the size of such aggregate should be worked out in each case pragmatically with an idea of securing convenient and efficient dispatch of trial business."). When the Federal Rules of Civil Procedure were drafted (with Charles E. Clark, notably, serving as reporter), great pains were taken to omit "cause of action" entirely from the rules. Instead, under the rules, a plaintiff is to plead a "short and plain statement of the claim." Fed. R. Civ. Proc. 8(a). Clark commented upon the new form of "claim" as follows: "These rules make the extent of the claim involved depend not upon legal rights, but upon the facts, that is, upon a lay view of the past events which have given rise to the litigation. Such lay view of a transaction or occurrence, the subject matter of a claim, is not a precise concept; its outer limits should depend to a considerable extent upon the purpose for which the concept is being immediately used." Charles E. Clark, *Cases on Pleading and Procedure* 658 (1940). The better view of the Federal Rules, then, and the one adopted by the court in *Broder v. Cablevision Sys. Corp.*, is to look to those units of the pleading that are logically discrete, and to determine whether a federal question is necessarily embedded in these units. *See* 418 F.3d at 194 ("what a plaintiff presents as one 'count' may be understood to encompass more than one 'claim.'").

6 To be sure, in *In re Circular Thermostat*, 2005 WL 2043022 (N.D. Cal. Aug. 24, 2005) (Alsup, J.)), this Court declined to exercise jurisdiction over a removed case based on *Christianson*. There, six

The *Christianson* holding—when interpreted correctly—is thus consistent with a long line of cases holding that federal question jurisdiction must be guided by a flexible inquiry designed to ensure that it is the federal courts that answer important questions of federal law without providing all parties a "password" to the federal courts. *See Gully v. First National Bank in Meridian*, 299 U.S. 109, 117-18 (1936) ("what is needed is something of that common-sense accommodation of judgment to kaleidoscopic situations which characterizes the law in its treatment of problems of causation…a selective process which picks the substantial causes out of the web and lays the other ones aside") (Cardozo, J.); *Grable & Sons*, 545 U.S. at 314 (disavowing "single, precise, all-embracing test for federal jurisdiction" in favor of more "pragmatic" approach). Plaintiff, instead, urges a rigid and formalistic bar to entry to the federal courts. According to his reasoning, a plaintiff need only provide some state basis for relief, even in a complaint that is overwhelmingly the product of federal law, to avoid federal jurisdiction. That position is neither supported by *Christianson* nor consistent with the many cases preceding and following *Christianson*.

**C. The Federal Questions At Issue Here Are Both Disputed and Substantial.**

Whether LMRA section 302(a) and NLRA section 8(a)(2) and 8(b)(6) were violated by United Way's payments to union officials is both hotly disputed and constitutes an "important issue of federal law that sensibly belongs in a federal court." *See Grable & Sons Metal Products, Inc.*, 545 U.S. at 315. This is no "fact-bound and situation-specific" inquiry. Plaintiff's claim advances a novel theory—that LMRA section 302(a) is violated even when payments are made to union officials without the purpose or effect of influencing union organizing or collective-bargaining activities. Similar issues are presented

---

plaintiffs alleged nearly identical claims of unfair competition and antitrust violations, and "only state law claims [were] asserted." *Id.*, *1. Indeed, "claims arising under federal law [were] expressly disclaimed in five of the six complaints." *Id.*, at *4. Here, in contrast, plaintiff expressly relies on the "public policy of the United States of America," Cmplt., ¶ 20, which in his motion to remand he specifies to be LMRA section 302(a) but may also be NLRA section 8(a)(2) and (b)(6). Moreover, we read *In re Circular Thermostat* as emphasizing the absence of a serious federal interest in resolving trademark (as opposed to patent) disputes: "Congress has indicated that state courts are equally competent to tackle issues of trademark law." 2005 WL 2043022, at *7. The same cannot be said about the law of labor-management relations which, since the enactment of the National Labor Relations Act in 1935, has always been viewed as an area of predominately federal purview. *See, e.g., Teamsters, Chauffeurs & Helpers Union v. Morton*, 377 U.S. 252, 259-60 (1964) (finding that state involvement in labor-management relations runs the risk of frustrating congressional determinations and "upset[ing] the balance of power between labor and management expressed in our national labor policy.").

under NLRA section 8(a)(2) and 8(b)(6). The Court will need to decide the contours of these federal statutes to resolve plaintiff's wrongful-termination claim.

The federal courts have a powerful interest in maintaining uniform interpretations of federal labor law. *See, e.g., Teamsters, Chauffeurs & Helpers,* 377 U.S. at 259-60. This interest surely is as strong as other areas of federal regulation where courts have found a sufficient basis for federal jurisdiction where state causes of action reference federal law. Cases so holding have involved, for example, federally-regulated rates charged for cable television, *Broder*, 418 F.3d at 191, 195 (rates charged for cable television implicate federal regulatory scheme, and rise to level of substantiality sufficient to support federal jurisdiction); federal maritime law, *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388-91 (3d Cir. 2002) (malicious prosecution action requiring reference to federal maritime law sufficient to support federal jurisdiction); federally-funded flood insurance, *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 607-08 (4th Cir. 2002) (breach of flood insurance contract requiring reference to contract underwritten by National Flood Insurance Program found sufficient to support federal jurisdiction); federal mail and wire fraud, *Ayres v. General Motors Corp.*, 234 F.3d 514, 519-20 (11th Cir. 2000) (state RICO claim requiring reference to federal mail and wire fraud statutes sufficient to support federal jurisdiction); and Indian gaming, *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1056 (9th Cir. 1997) (breach of licensing agreement by state government requiring reference to federal Indian Gaming Regulatory Act found sufficient to support federal jurisdiction).

Further, plaintiff's suggestion that upholding federal jurisdiction for a claim grounded in LMRA section 302(a) would lead to an enlargement of federal court jurisdiction cannot be taken seriously. *Grable*'s concern over "attract[ing] horde[s] of original filings and removal cases" is not presented here. It is a rare wrongful termination case in which the employee alleges he was terminated for opposition to practices unlawful under the LMRA. *See Grable*, 545 U.S. at 318. Indeed, the absence of any risk of opening the floodgates to the federal courts counsels in favor of denying plaintiff's motion for remand.[7]

[7] Plaintiff concludes his motion by suggesting that the courts will not find a federal question in wrongful termination claims, and cites the inapplicable *Campbell v. Aerospace Corporation*, 123 F.3d 1308 (9th Cir. 1997). In *Campbell*, the court declined federal question jurisdiction for a wrongful termination claim based on the False Claims Act, because the False Claims act establishes explicit prerequisites for entry to the courts, and thus the court refused to provide a "backdoor FCA state claim." *Id.* at 1315. There are no such explicit prerequisites here, and *Campbell* is accordingly inapposite. So, too, is *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544 (6th Cir. 2006), also cited by plaintiff, a case

Plaintiff suggestion that this court should decline jurisdiction because the LMRA and NLRA do not provide for a civil right of action is likewise meritless. The *Grable* Court upheld federal jurisdiction proper even though the plaintiff referenced a section of the Internal Revenue Code which also provided no civil right of action. The Court emphasized that the absence of a civil right of action under federal law is not dispositive and cannot displace the "sensitive judgments" that section 1331 requires. 545 U.S. at 318. The absence of a private right of action is worthy of only "some consideration in the assessment of substantiality." *Id.* The proper approach is to follow the *Grable* Court's more nuanced inquiry into the substantiality of the federal interest and any impact on the balance of state and federal power. Here, for the reasons stated, both factors weigh in favor of federal jurisdiction.

**IV. THE COURT HAS SUPPLEMENTAL JURISDICTION OVER THE REMAINDER OF PLAINTIFF'S COMPLAINT.**

Plaintiff does not dispute that if the Court has federal-question jurisdiction over that part of his First Cause of Action presenting substantial federal questions, it has supplemental jurisdiction over the remainder of his complaint under 28 U.S.C. section 1367(a). Supplemental jurisdiction is appropriate where supplemented claims are "so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case of controversy." 28 U.S.C. § 1367(a); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966) (finding supplemental jurisdiction where claims are sufficiently related that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding.") This is the case here. Plaintiff bases his First Cause of Action on all of his wrongful-termination allegations, including those alleging violation of public policy based on state law and those alleging violation of public policy based on federal law. *See* Cmplt., ¶ 18. He then bases his Second Cause of Action on all of his allegations in his First Cause of Action. *See id.*, ¶ 23. Furthermore, all of plaintiff's allegations in the First and Second Causes of Action are part of an alleged sequence of events leading to plaintiff's termination and its aftermath. The *Gibbs* requirements, accordingly, are clearly

---

in which the meaning of the federal statutes in question was "not in serious dispute." *Id.* at 552. Here, the parties disagree not only as to the occurrence of facts that might support a claim under the LMRA or NLRA occurred, but also regarding the meaning of the statutes, *i.e.*, whether a payment to a union official violates federal labor law when it is unaccompanied by any purpose or effect of influencing union organizing or collective-bargaining activities. *Eastman* thus examined an insubstantial federal question; that is not the case here.

met, and the Court has supplemental jurisdiction over the balance of the complaint not raising federal questions.

**V. CONCLUSION**

For the foregoing reasons, United Way requests that this Court deny plaintiff's motion for remand so that it may decide the necessary and substantial federal questions that plaintiff's complaint presents.

Dated: July 26, 2007.

JEFFREY D. WOHL
LAURA N. MONFREDINI
JEFFREY P. MICHALOWSKI
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Jeffrey D. Wohl
Jeffrey D. Wohl
Attorneys for Defendant
United Way of the Bay Area