1  DILLINGHAM & MURPHY, LLP
   WILLIAM GAUS (STATE BAR NO. 054999)
2  BARBARA L. HARRIS CHIANG (STATE BAR NO. 206892)
   wg@dillinghammurphy.com
3  bhc@dillinghammurphy.com
   225 Bush Street, 6th Floor
4  San Francisco, California 94104-4207
   Telephone:   (415) 397-2700
5  Facsimile:   (415) 397-3300

6      Attorneys for Plaintiff
       George Chen
7

8                  UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10 | GEORGE CHEN,                  | CASE NO. C 07-02785 WHA
11 |          Plaintiff,           | **PLAINTIFF'S OPPOSITION TO PETITION TO COMPEL ARBITRATION**
12 | v.                            |
13 | UNITED WAY OF THE BAY AREA,   | Date: August 16, 2007
                                     Time: 8:00 a.m.
14 |
15 |          Defendant.           |

|   |
|---|
| 1 |
| 2 |
| 3 |
| 4 |
| 5 |
| 6 |
| 7 |
| 8 |
| 9 |
| 10 |
| 11 |
| 12 |
| 13 |
| 14 |
| 15 |
| 16 |
| 17 |
| 18 |
| 19 |
| 20 |
| 21 |
| 22 |
| 23 |
| 24 |
| 25 |
| 26 |
| 27 |
| 28 |

TABLE OF CONTENTS

Page No.

Table of Authorities ..................................................................................................... iii

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

I.   FACTS ........................................................................................................................ 2

II.  ARGUMENT .............................................................................................................. 4

   A. California Law Controls the Issue of Whether there is an Enforceable Agreement to Arbitrate. .............................................................................................................. 4

   B. Under California Law, the Agreement is Substantively and Procedurally Unconscionable. ................................................................................................... 5

      1.   The Agreement is Substantively Unconscionable. ................................... 5

      2.   The Agreement is Procedurally Unconscionable. .................................... 6

   C. Defendant Ignores California Law and the Facts. .............................................. 7

      1.   Defendant Ignores and Misstates the Law and the Facts on Procedural Unconscionability Arbitrate. ..................................................................... 7

         a.   Defendant's reliance on Plaintiff's executive status ignores the law acts. ............................................................................................. 7

         b.   Defendant's reliance on Plaintiff's supposed ability to negotiate other terms ignores the law. ..................................................... 8

         c.   Defendant misstates the law and the facts with respect to procedural unconscionability. ................................................................ 8

      2.   Defendant Ignores the Facts with Respect to Substantive Unconscionability .................................................................................... 9

      3.   Defendant Misstates the Holding of *Boghos* and Other Cases .............. 10

      4.   In Arguing Severability, Defendant Ignores California Law .................. 12

III. CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Abramson v. Juniper Networks, Inc.*
  (2004) 115 Cal.App. 4th 638 ................................................................................... *passim*

*Armendariz v. Foundation Health Psychcare Services, Inc.*
  (2000) 24 Cal. 4th 83 ............................................................................................... *passim*

*Blake v. Ecker*
  (2001) 93 Cal.App. 4th 728, ............................................................................................. 9

*Boghos v. Certain Underwriters at Lloyd's of London*
  (2005) 36 Cal.4th 495 .................................................................................................... 11

*Doctor's Assocs., Inc. v. Casarotto*
  (1996) 517 U.S. 681 ........................................................................................................ 5

*Dunham v. Environmental Chemical Corporation*
  (N.D. Cal. 2006) 2006 WL 2374703 .............................................................................. 7

*Ferguson v. Countrywide Credit Industries, Inc.*
  (9th Cir. 2002) 298 F.3d 778 .......................................................................................... 5

*First Options of Chicago, Inc. v. Kaplan*
  (1995) 514 U.S. 938, 944 ................................................................................................ 5

*Fitz v. NCR Corporation*
  (2004) 118 Cal.App. 4th 702 .......................................................................................... 9

*Giuliano v. Inland Empire Personnel, Inc.*
  (2007) 149 Cal.App. 4th 1276 ...................................................................................... 12

*Graham v. Scissor-Tail, Inc.*
  (1981) 28 Cal. 3d 807 ..................................................................................................... 7

*Stirlen v. Supercits, Inc.*
  (1997) 51 Cal.App. 4th 1519 .......................................................................................... 8

*Harper v. Ultimo*
  (2003) 113 Cal.App. 4th 1402 ........................................................................... 7, 13, 14

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*
  (2005) 133 Cal.App. 4th 396 ........................................................................................ 12

*Kinney v. United HealthCare Services, Inc.*
  (1999) 70 Cal.App. 4th 1322; ......................................................................................... 9

*Le Francois v. Goel*
   (2005) 35 Cal. 4th 1094 ............................................................................................... 9

*Little v. Auto Stiegler, Inc.*
   (2003) 29 Cal. 4th 1064, 1071 ................................................................................... 10

*Martinez v. Master Protection Corporation*
   (2004) 118 Cal.App. 4th 107, ................................................................................ 5, 10

*McManus v. CIBC World Markets Corp.*
   (2003) 109 Cal.App. 4th 76, 91 .................................................................................. 9

*Mercuro v. Superior Court*
   (2002) 96 Cal.App. 4th 167 .................................................................................... 7, 9

*Nagrampa v. Mailcoups, Inc.*
   (2006) 469 F.3d 1257, 1280 ............................................................................. 6, 8, 10

*Nyulassy v. Lockheed Martin Corporation*
   (2004) 120 Cal.App. 4th 1267, ........................................................................ 6, 8, 13

*O'Hare v. Municipal Resource Consultants*
   (2003) 107 Cal.App. 4th 267, 282 .............................................................................. 9

*Parker v. McCaw*
   (2005) 125 Cal.App. 4th 1494, ................................................................................. 12

## **Statutes**

9 USC § 2 ........................................................................................................................ 4
Civil Code § 1670.5 ...................................................................................................... 13
Civil Code § 1668 ......................................................................................................... 12
UWBA Cal. Civ. Code § 47(C) .................................................................................... 12

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff GEORGE CHEN respectfully submits this Opposition to Defendant UNITED WAY OF THE BAY AREA (UWBA)'s Petition to Compel Arbitration of Plaintiff's Claim for Libel. Although both state and federal law favor enforcement of valid contracts for arbitration, both state and federal law require valid, enforceable contracts. The question of the enforceability of the contract is a question of state law. The federal court, in a removal case, follows state law, including the intermediate appellate courts of the state.

The arbitration agreement in question requires Plaintiff, but not Defendant, to submit all claims to arbitration. It shortens the statute of limitations for Plaintiff, but not Defendant. It denies all discovery for Plaintiff's claims, but not Defendant's. It is so clearly unenforceable under California law that even Defendant concedes the point with respect to Plaintiff's claim for violation of public policy.

Defendant argues, however, that the clause is not unenforceable with respect to Plaintiff's claim for libel. Defendant ignores the relevant law and the facts as follows:

- Defendant's arguments as to why the arbitration provision is not procedurally unconscionable have been considered and rejected by California courts. Defendant ignores this law.
- Defendant makes no serious argument that its one-sided agreement is not substantively unconscionable. It does not bother to discuss how its blatantly one-sided provisions, square with the relevant case law.
- California law holds that if an arbitration clause is unenforceable with respect to one claim but arguably enforceable as to another, the clause should not be enforced with respect to either claim under these circumstances. Defendant ignores these cases as well.

When the Court considers the law that governs this issue, and the facts that Defendant glosses over, it is clear that Defendant's Petition has no merit and should be denied.

///

///

## I.    FACTS

In April of 2001, George Chen reached an agreement to join UWBA as its Chief Financial Officer. Declaration of George Chen in Opposition to Petition to Compel Arbitration ("Chen Decl.") ¶ 2. At the time, all of the "back office" functions of United Way had been "spun off" to a supposedly independent entity known as PipeVine, Inc. Chen Decl. ¶ 4. The Chief Financial Officer of UWBA had no staff, not even a secretary, and no authority. Chen Decl. ¶ 8. He could not even write a check. Chen Decl. ¶ 8. All functions, including accounting, payroll, and human resources were spun off to this supposedly independent company which, in theory, would attract other customers that would use its "back office" expertise, thus lowering overhead for UWBA. Chen Decl. ¶ 4.

On his first day of work, Mr. Chen was given some documents to sign. Chen Decl. ¶ 3. One of them was an "application for employment," even though he was already hired. Another was a letter agreement, ostensibly dated May 9, 2001, but which was presented to him on May 16, 2001 after he was hired as part of his "hiring package." Chen Decl. ¶ 5. The letter was a form letter presented by PipeVine personnel who had no authority to make changes in it. Chen Decl. ¶ 5, 6. This letter contained a provision stating:

> By signing this agreement you agree that any and all disputes or controversies that you may have which arise out of, or as a result of employment hereunder, including claims of discrimination based upon sex, age, national origin, disability, race, or any other basis shall be resolved by final and binding arbitration as the sole and exclusive remedy. This agreement shall be governed by the Federal Arbitration Act (9 U.S.C. 1, et seq.) and the Arbitration must be initiated by your notice to The United Way within six months of the first occurrence of the events giving rise to the dispute. Such notice shall be in writing, delivered to the President, and shall contain a statement setting forth the remedy sought and the nature of the dispute, including the specifics of your claim. The sole neutral arbitrator shall be selected as provided in Rule 12 of the American Arbitration Association Voluntary Labor Arbitration Rules, as amended January 1, 1984.

1   Rules 4-6, 10, 11, 16-24, and 26-46 of those same Rules shall apply to and
2   govern the proceedings.  Expenses of the arbitration, other than your attorney's
3   fees, if any, or the expenses of producing witnesses or evidence for you, shall be
4   paid by The United Way up to a maximum amount of $1,000.00.  Exh. B to
5   Declaration of Eric McDonnell.

6   The rules referred to in the provision quoted above were not attached.  Chen Decl. ¶ 6.

7   Plaintiff immediately noted that PipeVine, the purported "spin-off" operation, had
8   questionable financial controls and accounting practices.  Compl. ¶ 9.  He reported these
9   shortcomings to his superiors, but UWBA refused to take action, because of longstanding business
10  ties to the management of the purported spin-off.  Compl. ¶ 9.  Plaintiff also identified numerous
11  examples of improper financial management and reporting by UWBA.  Compl. ¶ 10.  Plaintiff
12  identified misreporting of revenues received, which would make it appear that UWBA's total
13  revenues were significantly higher than they actually were, based on sound accounting principles.
14  Compl. ¶ 12.  UWBA sought to omit items of overhead that had to be reported, according to sound
15  principles.  Compl. ¶ 10.  The purpose of this misreporting was to mislead the public on an issue
16  of importance:  Was UWBA using the money entrusted to it efficiently.  Inflating total revenue
17  and underreporting overhead both tended to conceal UWBA's extremely high overhead, which
18  showed the public that far too many of its dollars would not reach the intended recipients, but
19  would instead stop at UWBA's offices.  Chen Decl. ¶ 7.

20  Plaintiff's actions created friction with his superiors.  Chen Decl. ¶ 10.  Plaintiff persisted
21  in demanding that UWBA management face up to the shortcomings of PipeVine, acting with
22  increasing urgency as the shortcomings of PipeVine became more apparent to him, despite no
23  support or acknowledgement of his superiors of any problems.  Chen Decl. ¶ 10.  When UWBA's
24  financial reporting was not accurate, Plaintiff would not sign off on it.  Compl. ¶ 9.  In case after
25  case, Plaintiff was able to show his superiors that their actions would not meet statutory
26  requirements or sound accounting practices.  Chen Decl. ¶ 11.  Plaintiff's persistent questioning of
27  PipeVine officials led PipeVine employees to formally accuse him of creating a "hostile
28  environment."  Chen Decl. ¶ 10.

1  In 2005, PipeVine collapsed and closed its doors, leaving millions of dollars unaccounted for. This disaster caused heavy losses for charitable agencies that relied on UWBA and triggered significant lawsuits, some of which are still pending. Chen Decl. ¶ 11. The PipeVine employees who accused Mr. Chen of creating a "hostile environment" were significantly involved in these losses. Chen Decl. ¶ 11.

Plaintiff's opposition to improper financial reporting in 2006 created overt hostility from other management. Plaintiff was threatened with termination when he maintained—correctly—that the Director of UWBA was misreporting funds received from SBC Corporation. Chen Decl. ¶ 12. His superiors were similarly hostile to his questioning of whether funds raised by Chevron Corporation—UWBA's biggest single source of funding—were significantly exaggerated. Chen Decl. ¶ 12. He had previously raised the same question with respect to Clorox and had demonstrated the UWBA's reporting in that case was grossly exaggerated. His superiors were openly hostile to his questioning of whether payments to Union officials who did no work for UWBA were proper. Chen Decl. ¶ 12.

In August, 2006, Plaintiff returned from a vacation to find that he was suspended and required to leave the premises. Compl. ¶ 16. He was subsequently terminated for creating a "hostile work environment" in which "people were intimidated." Compl. ¶ 16. He was never informed of the specific actions he was accused of which supposedly created the "hostile work environment." Compl. ¶ 16. He was instructed not to contact staff or Board members. Compl. ¶ 16.

## II. ARGUMENT

### A. California Law Controls the Issue of Whether there is an Enforceable Agreement to Arbitrate.

The Federal Arbitration Act provides, in relevant part, that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract. 9 USC § 2. This means that state contract law governs the issue of whether grounds exist at law or in equity for refusing to enforce the purported agreement to arbitrate. As the Ninth Circuit stated in *Ferguson v. Countrywide Credit Industries, Inc.* (9th Cir.

1  2002) 298 F.3d 778, 782 "In determining the validity of an agreement to arbitrate, federal courts
2  should apply ordinary state-law principles that govern the formation of contracts. Thus, generally
3  applicable defenses, such as unconscionability, may be applied to invalidate arbitration
4  agreements without contravening § 2 of the FAA." *Citing and Quoting First Options of Chicago,*
5  *Inc. v. Kaplan* (1995) 514 U.S. 938, 944 and *Doctor's Assocs., Inc. v. Casarotto,* (1996) 517 U.S.
6  681, 687 (citations, quotation marks, brackets and ellipses omitted).

      **B.    Under California Law, the Agreement is Substantively and Procedurally Unconscionable.**

          **1.    The Agreement is Substantively Unconscionalbe.**

10       The agreement in question is both substantively and procedurally unconscionable.
Substantively, it is far more one-sided than agreements found unconscionable by California courts.
The agreement provides that Mr. Chen agrees that "any dispute you may have" will be subject to
arbitration. UWBA's claims are not subject to the same provisions. In *Armendariz v. Foundation
Health Psychcare Services, Inc.* (2000) 24 Cal. 4th 83, 118, the California Supreme Court ruled
that it is "unfairly one-sided for an employer with superior bargaining power to impose arbitration
on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim
against the employee, without at least some reasonable justification for such one-sidedness . . ."

      The agreement further provides that Mr. Chen's statute of limitations for any claims he
may want to make is truncated to "six months of the first occurrence of the events giving rise to
the dispute." Claims by UWBA are not subject to the same truncated statute of limitations.
*Martinez v. Master Protection Corporation* (2004) 118 Cal.App. 4th 107, 117 (Arbitration
agreement which required "the assertion of all statutory and common law claims covered by the
agreement within six months of the date when the claim arises . . . . constitutes an unlawful
attempt by [the employer] to restrict its employees' statutory rights.").

      The Labor Arbitration Rules incorporated into the agreement do not allow for discovery.
The *Armendariz* court ruled that employees "are at least entitled to discovery sufficient to
adequately arbitrate their statutory claim" 24 Cal. 4th at p. 104. Moreover, as with other
provisions, this provision is completely one-sided, applying to the claims Plaintiff may have, but

Page 5 - CASE NO. C 07-02785 WHA
PLAINTIFF'S OPPOSITION TO PETITION TO COMPEL ARBITRATION

1  not applying to claims that Defendant may have.[1]

2  The agreement imposes costs on the employee which he would not have were the case in
3  court. *Armendariz* holds that "when an employer imposes mandatory arbitration as a condition of
4  employment, the arbitration agreement or arbitration process cannot generally require the
5  employee to bear any *type* of expense that the employee would not be required to bear if he or she
6  were free to bring the action in court." 24 Cal. 4th at p. 110-111.

### 2. The Agreement is Procedurally Unconscionable.

The agreement is as procedurally unconscionable as it is substantively unconscionable. It was presented to Mr. Chen as part of his "package" of documents to sign on his first day of employment. The agreement was a form agreement, used, at that time for all new hires. With respect to the arbitration provision, Mr. Chen had two choices: Agree to it or leave. The arbitration agreement referred to provisions of the American Arbitration Association Labor Arbitration Rules, but did not attach them. These facts establish procedural unconscionability. *Nyulassy v. Lockheed Martin Corporation* (2004) 120 Cal. App. 4th 1267, 1284 (Agreement unconscionable, in part because the agreement was "a standard form utilized by defendant at the time for the hiring of its employees."). *Nagrampa v. Mailcoups, Inc.* (9th Cir. 2006) 469 F.3d 1257, 1282 ("An arbitration agreement that is an essential part of a 'take it or leave it' employment

---

[1] UWBA may claim that these provisions apply equally to all claims, relying on the introductory language stating that "United Way agrees, and by signing this letter you also agree, that binding arbitration before a neutral arbitrator, rather than court litigation, shall be the sole method for resolving disputes." Exh. B to McConnell Declaration. This would be an attempt to re-write the agreement after the fact to avoid the consequences. The provisions eliminating discovery, truncating the statute of limitations other provisions clearly apply to "any and all disputes or controversies that you may have which arise out of, or as a result of employment hereunder." The truncated statute of limitations requires that "the Arbitration must be initiated by your notice to The United Way within six months of the first occurrence of the events giving rise to the dispute." Moreover, UWBA asserted a claim against Mr. Chen for return of a laptop computer, which he allegedly had not returned, threatening in a letter dated May 7, 2007, to "assert claims against Mr. Chen for their return and resulting damages." Exhibit A to the Declaration of William Gaus in Opposition to Petition to Compel Arbitration ("Gaus Decl."). Mr. Chen was terminated in August, 2006. There has been a failed effort by Mr. Chen to arrange a return of his property held by UWBA simultaneous with his return of the laptops in October, 2006. Exhibit B to Gaus Decl. UWBA's threat in May of 2007, to bring action against Mr. Chen obviously reflects UWBA's belief that their claim was not subject to the requirement that it must be brought "within six months of the first occurrence of the events giving rise to the dispute."

1  condition, without more, is procedurally unconscionable.") (*quoting Mercuro v. Superior Court,*
2  96 Cal.App. 4th 167, 174).

3        Moreover, UWBA's reference to selected rules of the American Arbitration Association
4  Labor Arbitration Rules without attaching them, by itself, satisfied the requirement of procedural
5  unconscionability. *Harper v. Ultimo* (2003) 113 Cal.App. 4th 1402, 1406 (procedural
6  unconscionability because the party agreeing to arbitration "is forced to go to another source to
7  find out the full import of what he or she is about to sign-and must go to that effort *prior* to
8  signing." (Emphasis in the original); *Dunham v. Environmental Chemical Corporation* (N.D. Cal.
9  2006) 2006 WL 2374703, slip. Op. at p. 10 (Agreement procedurally unconscionable because
10 "though the AAA rules were referenced in the Arbitration Agreement, the rules themselves were
11 never provided to Dunham.").

12     **C.**    <u>**Defendant Ignores California Law and the Facts**</u>

13         **1.**    **Defendant Ignores and Misstates the Law and the Facts on**
14             **Procedural Unconscionability**

15             **a.**    **Defendant's reliance on Plaintiff's executive status ignores the law**

16     Defendant argues that there is no procedural unconscionability because "[b]efore joining
17 United Way, plaintiff, according to his own resume, was a seasoned high-level executive who had
18 been responsible for multi-million dollar turnarounds at two companies; negotiated 2.5 million
19 credit facilities, major cost reductions from suppliers with no loss in service, and international
20 sources of supply to support sales growth and run finance and administrative departments,
21 including creating and implementing their policies and hiring staff." Memorandum in Support
22 Motion ("Def. Mem.") p. 10.  The California courts have squarely rejected the proposition that a
23 person's wide business experience and skills defeat a claim of procedural unconscionability.  In
24 *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App. 4th 638, 662, the court rejected
25 "plaintiff's status as a person of 'substantial renown' in his profession as proof of his equal
26 bargaining power." The court noted that in *Graham v. Scissor-Tail, Inc.* (1981) 28 Cal.3d 807,
27 812, the contract was found to be adhesive "even though plaintiff was a successful and
28 sophisticated corporate executive. The suggestion that a contract or clause cannot be

1  unconscionable if it is accepted by a knowledgeable party has been rejected by our Supreme

2  Court." 115 Cal.App.4th at p. 662-663, *quoting Graham v. Scissor-Tail, supra* and *Stirlen v.*

3  *Supercits, Inc.* (1997) 51 Cal.App. 4th 1519, 1534 (Citations and internal quotation marks

4  omitted.). *Nagrampa v. Mailcoups, Inc.* (2006) 469 F.3d 1257, 1283 (*en banc*)  ("[T]he

5  sophistication of a party alone, cannot defeat a procedural unconscionability claim.").

           **b.**    **Defendant's reliance on Plaintiff's supposed ability to negotiate other terms ignores the law.**

8          In the same vein, UWBA points to the fact that, included in its form agreement was

9  boilerplate language stating "If you believe other promises have been made previously, tell us

10  about them before you sign and, if we agree, we will include them." Def. Mem., pp. 9-10.

11  UWBA argues that "the agreement even advised plaintiff to seek the advice of an attorney before

12  accepting it." Def. Mem., p. 10.  California courts have rejected far stronger arguments, deciding

13  that, even where a plaintiff has negotiated other issues successfully, "Plaintiff's ability to negotiate

14  other aspects of his employment with Juniper has no bearing on the question of whether he had

15  power to negotiate the *arbitration* provision." *Abramson v. Juniper Networks, Inc.* (2004) 115

16  Cal.App. 4th 638, 662 (Emphasis in the original); *Nyulassy v. Lockheed Martin Corporation*

17  (2004) 120 Cal.App. 4th 1267, 1285 (Fact that plaintiff was represented by counsel and

18  successfully negotiated a three-year 'good cause' provision in his contract did not defeat a finding

19  of procedural unconscionability, citing and quoting the passage from *Abramson* quoted above.)  If

20  actual representation by counsel and actual negotiation over other terms has "no bearing" on the

21  issue of procedural unconscionability, then hypothetical negotiations with hypothetical advice

22  from counsel over unspecified "other provisions" as suggested by self-serving boilerplate have no

23  bearing.

           **c.**    **Defendant misstates the law and the facts with respect to procedural unconscionability.**

26          Defendants also claim that procedural unconscionability "requires an inequality in

27  bargaining power *accompanied by* lack of disclosure of material provisions." Def. Mem. p. 11

28  (Emphasis supplied by defendant). Although the defendant quotes a California case, the statement

1  is not an accurate statement of the law. "In assessing procedural unconscionability, the relevant
2  factors are oppression and surprise." *Abramson v. Juniper Networks, Inc.* (2004) 115 Cal.App.
3  4th 638, 662. The court in *Abramson* noted that "surprise is not a necessary predicate to a finding
4  of procedural unconscionability," citing five California cases in support.[2] In addition to *Abramson*
5  and the five cases it cites, the case of *Fitz v. NCR Corporation* (2004) 118 Cal. App. 4th 702, 722
6  ruled that "Even if a party is aware of some of the contractual terms, procedural unconscionability
7  may still be found. When a contract is oppressive, awareness of its terms does not preclude a
8  finding that the arbitration agreement is unenforceable."

9  Moreover, even if surprise were an essential ingredient of procedural unconscionability, it
10 is present here. As we have shown, UWBA's arbitration provision referred to selected provisions
11 of AAA Labor Arbitration Rules, which it did not attach (Chen Decl. ¶6).. This reference to these
12 rules meant that, although it could not be discerned from the face of the document, the party
13 signing it was waiving *all* discovery. As applied to the instant case, this would mean that UWBA
14 could fire Mr. Chen, accusing him of the type of misconduct that would make him a questionable
15 candidate for future executive positions, tell him nothing about the specific accusations against
16 him and, if he challenged this action, he would learn who accused him and what these persons said
17 for the first time at the hearing on his claim.

18 In short, UWBA's arguments with respect to procedural unconscionability ignore the facts
19 and mislead the Court with respect to the controlling law.

20  **2.  Defendant Ignores the Facts with Respect to Substantive Unconscionability.**
21

22 UWBA does not bother to discuss the factors that lead to a conclusion of substantive
23 unconscionability, confining itself to the self-serving observation that "There is nothing
24 'shockingly unconscionable' about an agreement to arbitrate disputes with an employer." Def.
25 Mem., p. 11. As we have shown, however, it is unconscionable to have a clause where the claims

---

[2] *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App. 4th 1322, 1330; *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App. 4th 76, 91; *Mercuro v. Superior Court* (2002) 96 Cal.App. 4th 167, 174-175; *Blake v. Ecker* (2001) 93 Cal.App. 4th 728, 742 overruled on other grounds, *Le Francois v. Goel* (2005) 35 Cal. 4th 1094; *O'Hare v. Municipal Resource Consultants* (2003) 107 Cal.App. 4th 267, 282.

1  of the employee are subject to arbitration, but not the employer.  It is unconscionable for all of the
2  employee's claims to be subject to a truncated statute of limitations, while none of the employer's
3  claims are.  It is unconscionable for the employee's claims—but not the employer's--to be subject
4  to a procedure where there is no discovery.  It is unconscionable for the employee to be subjected
5  to additional costs that he or she would not have if the claim were brought in court.  Defendant's
6  argument boils down to the assertion that these clauses do not shock UWBA's conscience, no
7  matter what controlling California cases may say.  Fortunately, UWBA's conscience is not the
8  standard.

### 3. Defendant Misstates the Holding of *Boghos* and Other Cases

10  UWBA implies that one-sided provisions such as lack of discovery that applies only to the
11  employee's claims or the truncated statute of limitations that applies only to the employee's claims
12  are irrelevant to the issue of unconscionability.  This is misinformation.  Any arbitration
13  agreement is unconscionable if it is one-sided.  As the Ninth Circuit has observed "An arbitration
14  provision is substantively unconscionable if it is overly harsh or generates one sided results.  The
15  paramount consideration in assessing conscionability is mutuality.  California law requires an
16  arbitration agreement to have a modicum of bilaterality, and arbitration provisions that are unfairly
17  one-sided are substantively unconscionable." *Nagrampa v. Mailcoups, Inc.* (2006) 469 F.3d 1257,
18  1280-1281 (*en banc)* quoting *Armendariz, supra,* 24 Cal.4th at p. 114; 117;  *Abramson, supra* 115
19  Cal.App. 4th at p. 657 and *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071. "An arbitration
20  agreement is substantively unconscionable if it requires the employee but not the employer to
21  arbitrate claims."  *Martinez v. Master Protection Corporation* (2004) 118 Cal.App. 4th 107, 114,
22  *quoting Armendariz, supra* 24 Cal.4th at pp. 115-121.  (Citations, quotation marks and brackets
23  omitted.)
24  Ignoring this law, UWBA argues that its one-sided provisions are of no consequence
25  because—according to Defendant--these considerations were discussed in the *Armendariz* case
26  and, according to UWBA "The *Armendariz* protections . . . apply only to a narrow range of
27  claims—founded on statute or public policy—and do not extend to common law claims such as

1  libel." Def. Mem., p. 12. According to Defendant, the California Supreme Court has ruled "that

2  *Armendariz* has *not* been applied to common law claims generally. Def. Mem. p. 13, *purportedly*

3  *quoting Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 506

4  (Emphasis in the original). This is a significantly misleading statement of the law for two reasons.

5  First, *Armendariz* established special standards for relief from extra costs or expenses applicable

6  to a class of employment cases. In *Boghos v. Certain Underwriters at Lloyd's of London* (2005)

7  36 Cal.4th 495 the California Supreme Court declined to extend the *Armendariz* ruling "to

8  insurance disputes and to declare the [insurance] policy's arbitration clause unenforceable because

9  it requires him to share with the Underwriters the costs of arbitration and the arbitrator's fees." 36

10 Cal. 4th at p. 507. The *Boghos* court noted "we have not extended the *Armendariz/Little* cost-

11 shifting rule to common law claims generally." 36 Cal.4th at p. 507. Defendant's use of a

12 fragment of this passage to state "The *Boghos* court further held that *Armendariz* has *not* been

13 extended to 'common law claims generally." Def. Mem. at p. 13. (Emphasis in the original)

14 misleads, rather than informs.

15       Moreover, Defendant is equally misleading in claiming that *Boghos* and other cases have

16 drawn a tight ring around a "narrow range of claims" where employees get the full benefit of the

17 *Armendariz* opinion, including the cost-shifting provisions, leaving it open season on employees

18 for all other claims. In Defendant's view, an employer could get its employees to agree that the

19 employer could commit a wide range of intentional, malicious torts and the employee could, by

20 agreement, be limited to a truncated statute of limitations, denied all discovery, and potentially

21 face greatly increased costs, so long as the employer did not include FEHA claims or claims of

22 termination in violation of public policy. No California case that we are aware of has ever put

23 forward such a palpably unjust rule.

24       The distinction drawn between *Boghos* on the one hand, and *Armendariz/Little* on the other

25 is not between "statutory" and "non-statutory" claims, it is between waivable and non-waivable

26 claims. *Boghos, supra,* 36 Cal.4th 495, 506 ("Through the FEHA, we reasoned, the Legislature

27 created substantive and procedural rights not just for the benefit of individuals but also for public

28

1  purposes; accordingly, those statutory rights are unwaivable under Civil Code sections 1668 and
2  3513." (Footnotes omitted)). The lower appellate court cases cited by Defendant make the same
3  distinction. *Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court* (2005) 133
4  Cal.App. 4th 396, 415 (*Armendariz* potentially applicable if franchisees' claims involved rights
5  "deemed to be unwaivable under Civil Code sections 1668 and 3513."); *Giuliano v. Inland Empire*
6  *Personnel, Inc.* (2007) 149 Cal.App. 4th 1276, 1288 (*Armendariz* applies for "statutory rights
7  [which ] are unwaivable under Civil Code section 1668 and 3513."), not to "'garden variety'
8  breach of contract action"; *Parker v. McCaw* (2005) 125 Cal.App. 4th 1494, 1497  (Attorney
9  negotiated an agreement with a person to whom he served as "financial advisor, lawyer, counselor,
10 good friend and intimate partner." *Armendariz* held inapplicable because the agreement he
11 negotiated was "not a 'generic' or standard agreement."). Defendant's assertion that these cases
12 draw a bright line with FEHA and *Tameny* claims on one side and all other claims on the other is
13 simply more misinformation about the applicable law.
14      The reason the courts look to the issue of whether a claim is waivable is that, if a claim
15 cannot be waived by contract, it should not be possible to hamstring the claim by contract, such as
16 by creating special costs that discourage the individual from bringing the claim. Applying the
17 most commonly-articulated standard for when the *Armendariz* cost-shifting standards might apply,
18 it is clear that a claim for libel would not be "waivable under Civil Code Sections 1668 and 3513."
19 Civil Code § 1668 provides, in pertinent part, that a person may not enforce contracts waiving
20 liability for "willful injury to the person or property of another"  Mr. Chen's claim of libel requires
21 a showing of malice on the part of UWBA Cal. Civ. Code § 47(c).
22           **4.     In Arguing Severability, Defendant Ignores California Law**
23      Even if UWBA were correct in its view that a claim of libel, by itself, could be subject to
24 arbitration under a clause such as the one at issue here, they ignore the fact that the arbitration
25 clause at issue here is so clearly unenforceable with respect to the claim of termination in violation
26 of public policy that even UWBA cannot see an argument for its enforcement. UWBA informs
27 the Court that, in this situation, the law requires that the unenforceable clause be enforced with
28 respect to some claims and not others. This is not the law.

1    California Civil Code provides that where a contractual provision is unconscionable, "the
2  court may refuse to enforce the contract, or it may enforce the remainder of the contract without
3  the unconscionable clause, or it may so limit the application of any unconscionable clause as to
4  avoid any unconscionable result." Cal. Civ. Code § 1670.5. Thus, the Court has discretion, but
5  there are guidelines. Borrowing from the factors that guide a court in deciding whether to
6  completely invalidate or partially enforce an illegal contract, the California Supreme Court ruled
7  that, in the case of an unconscionable arbitration contract, the contract should not be enforced
8  where there are "multiple defects [which] indicate a systematic effort to impose arbitration on an
9  employee not simply as an alternative to litigation, but as an inferior forum that works to the
10 employer's advantage." *Armendariz, supra,* 24 Cal.4th at p. 124. California cases have applied
11 this rule to invalidate unenforceable arbitration agreements that would have included both
12 statutory and non-statutory claims. *Abramson, supra,* at 115 Cal.App. 638, 644 (claims for breach
13 of contract, fraud, misrepresentation, termination of employment in violation of public policy,
14 unfair competition and defamation. No severance because severance would "produce, rather than
15 prevent undeserved benefit and detriment." 115 Cal.App. 4th at p. 667; *Harper v. Ultimo,* (2003)
16 113 Cal.App. 4th 1402 (approving "trial court's refusal to sever arbitral from nonarbitral claims"
17 noting that the claims "were all bound up with each other." 113 Cal.App. 4th at p. 1411; *Nyulassy
18 v. Lockheed Martin Corporation* (2004) 120 Cal. App. 4th 1267, 1287-1288 (Action for breach of
19 contract, breach of the covenant of good faith and fair dealing, wrongful demotion in violation of
20 public policy and violation of section 6310 of the Labor Code. Arbitration agreement not enforced
21 because it was "substantively unconscionable because it lacks any degree of mutuality, imposes
22 upon plaintiff a prearbitration resolution procedure controlled by defendant, and severely limits
23 the time within which plaintiff may demand arbitration to vindicate his rights."

24    This case provides a textbook example of a situation where severance would allow a party
25 to get the benefit of its unconscionable provision. UWBA would be able to defend the claim of
26 libel in a proceeding where Mr. Chen would learn of the evidence against him and have the
27 opportunity to respond for the first time at the hearing. Mr. Chen would have no access to the
28 wealth of documentation showing UWBA's cavalier attitude toward PipeVine's deficiencies and

Page 13 - CASE NO. C 07-02785 WHA
PLAINTIFF'S OPPOSITION TO PETITION TO COMPEL ARBITRATION

1  its own misfeasance in financial matters.  He would have no access to the documentation showing
2  how he insisted on proper standards and how his superiors resented him for it.  Armed with this
3  enormous advantage, UWBA would seek a decision either that the statements they made
4  concerning Mr. Chen were true or that they made the statements out of a good-faith belief that
5  they were true, rather than out of malicious resentment of Mr. Chen's insistence on proper
6  financial reporting and management.  They could then argue that whatever favorable findings they
7  had secured in this monumentally unfair proceeding should preclude relitigation of the same issue
8  in the court case.  This scenario would reward "a systematic effort to impose arbitration on an
9  employee not simply as an alternative to litigation, but as an inferior forum that works to the
10 employer's advantage." *Armendariz, supra,* 24 Cal. 4th at p. 124.

Even if there were no issue preclusion, there would be a risk of inconsistent adjudications. In *Harper v. Ultimo* (2003) 113 Cal.App. 4th 1402, 1411, the court approved a refusal to sever based, in part, on the fact that "We could have the anomaly that the arbitrator might award little or no contract damages, find that Ultimo made no misrepresentations and fulfilled his contract, and the jury might find he did commit fraud, and try to assess punitive damages based on (perhaps hypothetical, perhaps not) compensatory damages inconsistent with the arbitrator's award of compensatory.  In short, it would be a mess."

## III. CONCLUSION

For the reasons set forth above, Defendant's Petition to Compel Arbitration should be denied.

                                Respectfully submitted

Dated:  July 26, 2007.            DILLINGHAM & MURPHY, LLP
                                      WILLIAM GAUS
                                      BARBARA L. HARRIS CHIANG

                                By:  _____/s/_ William Gaus_____
                                     Attorneys for Plaintiff George Chen