1  DILLINGHAM & MURPHY, LLP
   WILLIAM GAUS (SBN 05499)
2  BARBARA L. HARRIS CHIANG (SBN 206892)
   wg@dillinghammurphy.com
3  bhc@dillinghammurphy.com
   225 Bush Street, 6th Floor
4  San Francisco, California 94104-4207
   Telephone:    (415) 397-2700
5  Facsimile:    (415) 397-3300

6      Attorneys for Plaintiff
       GEORGE CHEN

7

8            UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10

11  GEORGE CHEN,                          Case No.:  C 07-02785 WHA (JCS)

12              Plaintiff,                **PLAINTIFF'S REPLY BRIEF IN
                                          SUPPORT OF MOTION TO REMAND**
13      vs.

14  UNITED WAY OF THE BAY AREA AND
    DOES 1-10, INCLUSIVE,
15

16              Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff GEORGE CHEN submits this reply memorandum in support of his motion to remand the above-captioned case to state court.  Defendant's opposition misstates the law, inaccurately summarizing key cases in order to establish supposed rules of law that do not exist, as follows:

- According to Defendant, there is no rule that alternative theories for a single claim must all contain federal questions for federal question jurisdiction to exist.
- According to Defendant the distinction between a "claim" on the one hand and a theory supporting a claim on the other, is so imprecise that it is not relied on.
- According to Defendant, there is a "complete adjudication" rule that governs this case.
- According to Defendant, if federal law embedded in a state law claim addresses an important federal concern, then federal question jurisdiction exists.

Defendant is unable to point to even a single case articulating any of these supposed rules because they do not exist.  Instead, the controlling cases articulate the rules stated by Plaintiff:  1) When federal law is part of a claim arising under state law, federal question jurisdiction exists only when the federal law is essential to securing the relief sought.  2) When the federal law is part of an alternative theory, there is no federal question jurisdiction because the federal law is, by definition, not essential.  3) Even where the federal law is essential to the resolution of the state law claim, federal question jurisdiction depends on factors such as whether the federal law provides a remedy or whether the federal law question is fact-bound and specific to the case or whether it is an issue of pure law.  The Court should apply the law as it is, not as Defendant imagines it.  This case should be remanded.

## II.    ARGUMENT

### A.    Defendant denies that the law with respect to alternative theories exists.

Defendant argues that "pleading alternative theories—some sounding in federal law, some not—does not preclude a finding of federal question jurisdiction" Def. Opp., p. 9.  This statement cannot be reconciled with the Supreme Court's ruling in *Christianson v. Colt*

1  *Industries Operating Corp.* (1988) 486 U.S. 800, 810 that "a claim supported by alternative

2  theories in the complaint may not form the basis for [federal question] jurisdiction unless

3  [federal] law is essential to each of those theories."  As we showed in Plaintiff's opening brief,

4  there are at least three Ninth Circuit cases articulating this exact rule, as well as two cases in the

5  Northern District of California.

6         Defendant cites *National Credit Reporting Association, Inc. v. Experian Information*

7  *Solutions, Inc.* (N.D. Cal. 2004) 2004 WL 188769 as support for its view that pleading

8  alternative theories, some federal, some not does not defeat federal jurisdiction.  The Court

9  found that there was jurisdiction because, although the plaintiff could prove his claim under

10  California Business and Professions Code 17200 without using federal law by showing

11  practices that were "unfair or fraudulent," one alternative theory was that federal antitrust laws

12  had been violated.  It appears that the *Christianson* rule was not raised by either side or by the

13  Court.  In the case of *In re Circular Thermostat* (N.D. Cal. 2005), the *Christianson* rule was

14  raised and this Court, like every post-*Christianson* court we are aware of, concluded that

15  "When a claim can be supported by alternative and independent theories—one of which is a

16  state law theory and one of which is a federal law theory—federal question jurisdiction does

17  not attach because federal law is not a necessary element of the claim."  2005 WL 2043022,

18  Slip. Op. at p. 5.  Q*uoting Rains v. Criterion Systems, Inc.* (9th Cir. 1996) 80 F.3d 339, 346.

19  (Quotation marks omitted).

20      **B.**  **Defendant's professed inability to distinguish between a claim and an**
             **alternative theory is entirely self-inflicted.**

21

22         Despite the wealth of cases ruling that a claim supported by alternative theories does not

23  raise a federal question unless each theory raises a federal question, Defendant asserts that

24  "Plaintiff makes far too much of the terms 'theory,' 'claim,' and 'cause of action; the

25  distinction between these terms is blurry at best."  Def. Opp. p. 9, n. 5.  As we have shown,

26  however, it is not Plaintiff choosing to use these terms, it is controlling case law, beginning

27  with *Christianson v. Colt Industries Operating Corp.* (1988) 486 U.S. 800, 811 ("The well-

28  pleaded complaint rule . . .focuses on claims, not theories and just because an element that is

1   essential to a particular theory might be governed by federal patent law does not mean that the

2   entire monopolization claim 'arises under' patent law.")  Defendant's professed belief that

3   these terms actually have no meaning is simply another way of denying that the *Christianson*

4   rule exists.

5           Because the distinction can be important, case law, including cases relied on by

6   Defendant, have articulated rules for when an assertion is a claim and when it is one theory in

7   support of a claim.  In the case of *Broder v. Cablevision System Corp.,* (2d Cir. 2005), 418 F.3d

8   187, 195, the court noted that "One of the key characteristics of a mere 'theory' as opposed to a

9   distinct claim, is that a plaintiff may obtain the relief he seeks without prevailing on it."  The

10  *Broder* court determined that there was a distinct federal claim because "Broder cannot obtain

11  the declaratory judgment he seeks, . . . without prevailing on the issue of whether Cablevision

12  in fact violated 47 U.S.C. § 543(d)."  The *Broder* court contrasted its case with *Christianson*

13  where the Supreme Court concluded that there were "reasons completely unrelated to the

14  potentially jurisdiction-bestowing issues why plaintiffs may or may not be entitled to the relief

15  they seek."  418 F. 3d at p. 195 (*Quoting Christianson, supra,* 486 U.S. at 812 (Citations,

16  brackets and internal quotes omitted)).  Similarly, in *Baker v. BDO Seidman, LLP* (N.D. Cal.

17  2005) 390 F.Supp. 2d 919, 924-925 the case was remanded, relying, in part, on this language in

18  *Broder* and concluding that "Plaintiffs in the instant case could obtain the same relief they seek

19  [for their claims of fraud and deceit] irrespective of whether the fraudulent and deceitful

20  conduct is established by the first theory of affirmative misrepresentation [which required

21  interpretation of federal tax law] or the second theory of concealment.[which did not require

22  interpretation of federal tax law]"

23          In the instant case, there are reasons completely unrelated to the supposed federal issue

24  that would entitle plaintiff to the relief he seeks for wrongful termination in violation of public

25  policy.  Plaintiff will be entitled to the same relief regardless of whether he establishes the

26  wrongful termination on the basis of his state law theory, or his federal law theory, or both in

27  combination, or each of them independently.  In any scenario, Plaintiff could get the same

28  relief, regardless of whether the theory involving federal law succeeds or fails.  Thus, applying

1   the test of *Christianson, Broder* and *BDO Siedman, supra*, Plaintiff's assertion concerning

2   federal law is a "theory" not a claim because "plaintiff may obtain the relief he seeks without

3   prevailing on it." *Broder, supra,* 418 F.3d at p. 195.

4       **C.     Defendant's purported "complete adjudication" rule is a slippery
            imaginary rule supported only by Defendant's misstatements.**

5

6       Ignoring the law, Defendant asserts that the real rule is that where there are alternative

7   theories, not all of which contain issues of federal law, federal question jurisdiction exists

8   unless the court can "fully adjudicate the plaintiff's claims without resort to federal law." Def.

9   Opp., p. 6. In Defendant's view, federal jurisdiction exists if "complete adjudication . . . [of the

10  relevant cause of action ] is just not possible" without addressing the federal issue. Def. Opp.

11  p. 8. Applying this supposed rule to the instant case, Defendant argues that citing California

12  Corporations Code § 6812 as a source of public policy has no bearing on removal because

13  "section 6812 has nothing to do with payments to union officials" Def. Opp., p. 1. "The Court

14  therefore cannot adjudicate plaintiff's claim that he was fired for opposing payments to union

15  officials based on section 6812; it will have to decide separately whether the payments violated

16  LMRA section 302(a) and NLRA section 8(a)(2) and 8(b)(6)." Def. Opp., p. 5. Defendant

17  cannot point to a single case articulating the supposed "complete adjudication" rule, because

18  there is no such case. By contrast, the alternative theory doctrine of *Christianson* appears time

19  and again in Supreme Court, Ninth Circuit and Northern District cases. This is because the

20  alternative theory doctrine is a rule of law and the "complete adjudication" rule is a frothy

21  concoction of Defendant's imagining.

22      Defendant's claim that the Court in *Christianson* did not establish an alternative theory

23  rule, but instead established their imaginary "complete adjudication" rule. According to

24  Defendant, the Court in *Christianson* ruled that "federal patent jurisdiction did not exist over

25  the plaintiffs' claims because they could be decided *in full* without necessarily reaching the

26  patent issues they raised." Def. Opp., p. 7. (Emphasis in the original). Defendant quotes a

27  portion of a paragraph of the opinion where the Court identified non-federal theories of

28  recovery and concludes, in Defendant's words, that this paragraph shows "a court could

1  completely resolve the plaintiffs' claims of antitrust violations . . . without ever addressing

2  whether the Colt patents were valid.  For that reason, and that reason only, the Supreme Court

3  found patent jurisdiction lacking." Def. Opp. p. 8.  Defendant cannot point to any particular

4  language articulating this conclusion because that is not what the Court said.

5        Why not let the Supreme Court speak for itself?  The Court actually concluded the

6  paragraph quoted by Defendant as follows: "Since there are reasons completely unrelated to the

7  provisions and purposes of federal patent law why petitioners may or may not be entitled to the

8  relief they seek under their monopolization claim, the claim does not 'arise under' federal

9  patent law." *Christianson, supra,* 486 U.S. at p. 812.

10        Defendant's purported "full adjudication" standard is calculatedly imprecise language

11  with different meanings in different paragraphs.  If "fully adjudicate" means—as in

12  *Christianson* and apparently as in paragraphs on pages 7 and 8 of Defendant's brief-- that

13  plaintiff may be able to prove his or her claim no matter how the federal issue comes out, then

14  Plaintiff's wrongful termination claim in this case can be "fully adjudicated" without resort to

15  federal law in the same sense that the *Christianson* claim could be "fully adjudicated."  If "fully

16  adjudicate" means to address every issue raised, one way or the other, as it apparently does on

17  pages 1 through 6 of Defendant's brief, neither this case nor the *Christianson* case nor many of

18  the other alternative theory cases could be "fully adjudicated" without addressing the issue of

19  federal law.  The *Christianson* Court did not rule that the federal issue would never have to be

20  addressed, only that it might not be determinative of the outcome.  That is why the relevant

21  cases: *Christianson, Broder v. Cablevision System Corp., supra, Baker v. BDO Seidman, supra,*

22  and others, focus on whether plaintiff "may or may not be entitled to the relief they seek"

23  regardless of how the federal issue might be decided.

24        Defendant attempts to bolster its imaginary "complete adjudication" rule by claiming

25  that the alternative theory rule has only been applied where "there was both a state and a federal

26  statutory basis for the public policy at issue." Def. Opp. p. 6.  According to Defendant, this

27  supposed fact means that "all these cases are inapplicable." Def. Opp., p. 7.  As with their

28  summary of the *Christianson* case, Defendant is supplying the Court with misinformation.  In

1    support of its claim that all the cases involved duplicative state and federal law, Defendant

2    asserts that, in the case of *Willy v. Coastal Corp.* (5th Cir. 1998) 855 F.2d 1160 the claim "relied

3    on both state and federal environmental laws." Def. Opp. p. 7.  The opinion actually states that

4    the plaintiff in *Willy* alleged that his employer terminated him based on "his refusal to violate,

5    state as well as federal environmental laws *and federal securities laws*."  855 F.2d 1160, 1169

6    (Emphasis added).  Thus, in *Willy,* as here, the claim of termination in violation of public

7    policy alleged, as an alternative theory, a federal statute with no state analog, which would have

8    to be addressed one way or the other, either by deciding it or by ruling that it was not necessary

9    to decide it.

10         Moreover, it is not correct to imply that, in cases where state and federal laws overlap,

11    that the court does not have to address the federal issues.  The federal law does not vanish

12    simply because there is a corresponding state statute.  Sometimes the laws may be so similar

13    that the federal law decision is an easy one, once the state law issue is decided and sometimes

14    deciding the federal law issue may not be necessary, but there is no guarantee.  In some cases,

15    the result under federal law can be very different than under an overlapping state statute and, in

16    every case, the court will have to address the issue, one way or the other, as in *Christianson*, as

17    in *Willy* and as here.  Defendant's sweeping attempt to distinguish all of the alternative theory

18    cases rests on misinformation about the cases and a distinction that does not distinguish.

19         **D.    Even if the federal policy allegations were regarded as a separate claim,**
          **Defendant disregards the law as to when a federal law which provides no**
20        **private cause of action confers federal jurisdiction over a state law claim.**

21         Even if Plaintiff's allegations concerning federal law were considered to be a claim,

22    rather than an alternative theory in support of a claim, there can be no dispute that "the mere

23    presence of a federal issue in a state cause of action does not automatically confer federal-

24    question jurisdiction." *Merrell Dow Pharmaceuticals Inc. v. Thompson* (1986) 478 U.S. 804,

25    813.  Plaintiff showed that the courts have established guidelines as to when federal jurisdiction

26    exists in this situation:  First, where as here, the federal law incorporated into the state law

27    claim does not create a private right of action, federal jurisdiction exists only in a "special and

28    small category." *Empire Healthchoice Assurance, Inc. v. McVeigh,* ___U.S.___, 126 S.Ct.

1    2121, 2136. "The lack of a private right of action counsels against a finding of federal question

2    jurisdiction." *Barbara v. New York Stock Exchange, Inc.* (2nd Cir. 1996) 99 F.3d 49, 54.

3    Second, it matters whether the federal issue is "a nearly pure issue of law [or] . . . .is fact-bound

4    and situation-specific." Empire Healthchoice Assurance, p. 2137.

5         Defendant implies that these factors are not important and that this issue should be

6    decided on that basis of the federal courts' "powerful interest in maintaining uniform

7    interpretations of federal labor law." Def. Opp. p. 9. As with the purported "full adjudication"

8    rule, Defendant can offer no cases articulating the purported "powerful interest" rule. This

9    supposed test would actually mean that virtually every state law claim containing a federal

10    issue would become a federal case, since it is far more common for federal laws to be passed

11    because of a perceived important federal interest, rather than out of lukewarm concern or

12    whimsy. This test is irreconcilable with the Supreme Court's admonition that, when federal

13    law provides no private right of action, only a "special and small category" of cases will be

14    federal cases.

15         Instead of discussing what converts a state law claim with a federal issue into a federal

16    case in this special situation, Defendant cites cases having nothing to do with the issue. The

17    case of *Teamsters, Chauffeurs & Helpers v. Morton* (1964) 377 U.S. 252, is a case under

18    Section 303 of the Federal Labor Management Relations Act, which provides a preemptive

19    federal remedy for persons damaged by the unlawful conduct of a union. Similarly, in

20    *Cabazon Band of Mission Indians v. Wilson,* (9th Cir. 1997) 124 F.3d 1050, four bands of

21    Indians sued under Tribal-State Compacts authorized by the Indian Gaming Regulatory Act of

22    1988 (IGRA). The Ninth Circuit ruled that "The Compacts quite clearly are a creation of

23    federal law; moreover, IGRA prescribes the permissible scope of the Compacts. We conclude

24    that the Bands' claim to enforce the Compacts arises under federal law . . ." 124 F.3d at p.

25    1056. The State argued that the Compacts merely incorporated a state law contract and that the

26    claim thus arose under state law, but the Ninth Circuit found that "this claim is not based on a

27    contract that stands independent of the Compacts" *Id. Battle v. Seibels Bruce Ins. Co.* (4th Cir

28    2002) 288 F.3d 596, the court found that plaintiff's claims for breach of the covenant of good

1   faith and fair dealing and for conversion were federal claims. (With respect to the breach of

2   covenant claim, "the law is well settled that federal common law *alone* governs the

3   interpretation of insurance policies issued pursuant to NFIP [National Flood Insurance

4   Program]." 288 F. 3d at p. 607. Claim for conversion was "essentially a breach of contract

5   claim with respect to Battle's SFIP, [Standard Flood Insurance Policy] which claim, . . . is

6   governed solely by federal law." 288 F.3d at p. 608. All three of these cases involve federal

7   laws with federal remedies. They have no bearing on when a state law claim embedding a

8   federal law with no private remedy fits into the "special and small category" of cases that

9   become federal claims.

10          The cases of *Ayres v. General Motors Corp.,* (11th Cir. 200) 234 F.3d 514 and *U.S.*

11   *Express Lines Ltd. v. Higgins*  (3rd Cir. 2002) 281 F.3d 383 are more on point, but these cases

12   rely on the rules put forward by Plaintiff, not on the "complete adjudication" or "powerful

13   interest" tests imagined by Defendant. In *Ayres*, the court found that plaintiff's state law claim

14   of corrupt practices, alleged violation of federal mail and wire fraud statutes. The court noted

15   that the claim "will be supported by a construction of the federal law concluding that the

16   federal crime is established, but defeated by another construction concluding the opposite."

17   234 F.3d at p. 519. The court concluded that this fact could make the case "one of those

18   exceptional cases requiring that we decide 'a federal question substantial enough to confer

19   federal question jurisdiction." *Id. (citation and quotation marks omitted).* The court cited and

20   quoted *City of Huntsville v. City of Madison* (11th Cir. 1994) 24 F.3d 169, 174 which ruled that,

21   even when interpretation of a federal statute is necessary to decide the state law claim, this fact

22   "is on its own not enough to confer federal question jurisdiction" The *Huntsville* court further

23   ruled that the absence of a federal right of action did not preclude federal question jurisdiction,

24   but "it will be only the exceptional federal statute that does not provide for a private remedy but

25   still raises a federal question substantial enough to confer federal question jurisdiction when it

26   is an element of a state cause of action." *Id.* In *U.S. Express Lines, Ltd v. Higgins* (3rd Cir.

27   2002) 281 F.3d 383, the court concluded that federal jurisdiction existed over a claim that a

28   party had misled the court by arguing that it should disregard a Federal Rule of Civil Procedure

1  in favor of an apparently contrary ruling by a United States Court of Appeals.  The court ruled

2  that "in the unique circumstances here, the federal issue set forth in the complaint is an

3  essential element of the plaintiffs' cause of action."  281 F.3d at p. 392.

4      Attempting to show an important legal issue, rather than a fact-bound application of

5  settled law, Defendant claims that "Plaintiff's claim advances a novel theory—that LMRA

6  section 302(a) is violated even when payments are made to union officials without the purpose

7  or effect on influencing union organizing or collective-bargaining activities."  Def. Opp., p. 10.

8  Defendant has no legal or factual basis for this assertion.  The statute in question can be

9  violated in a number of ways, some of which require showing that the Defendant attempted to

10  influence organizing or collective bargaining and some of which, on their face, do not.[1]

11  Section 302(a)(2) in particular, forbids payments to an organization or its officers or employees

12  if the organization "would admit to membership any of the employees of such employer."

13  Unlike other provisions, there is no required showing of an attempt to influence organizing or

14  bargaining.

15      Defendant has no basis, except its own speculation for asserting that Plaintiff will assert

16  that Section 302(a)(2) was violated, or, if so, that Plaintiff will confine himself to

17  Section 302(a)(2) and not any of the other provisions of Section 302(a).  Moreover, even if

18  Defendant were correct in its speculating that Plaintiff will focus on Section 302(a)(2),

19  Defendant's belief that it is "novel" to assert that payments to union officials, without more,

20  can violate some provisions of Section 302(a) is not supported by the language of the statute.

21  Defendant's assertion that this case will involve important new issues of federal law, rather

22  than a fact-bound application of the law to a specific set of facts is based on speculation about

---

24  [1]  The statute in question, in pertinent part, forbids payments by an employer "to a
    representative of any of his employees . . . or 2) to any labor organization, or any officer or
25  employee thereof, which represents, seeks to represent, or would admit to membership any of
    the employees of such employer . . . or 3) to any employee or group or committee of employees
26  . . . in excess of their normal compensation for the purpose of causing such employee or group
    or committee directly or indirectly to influence any other employees in the exercise of the right
27  to organize . . . or 4) to any officer or employee of a labor organization . . . with intent to
    influence him in respect to any of his actions . . . as a representative of employees . . ."  29 USC
28  186 (a).  (Emphasis added.)

1    Plaintiff's claims and misinformation about what the applicable statute says on its face.

2                              **III.    CONCLUSION**

3            For the reasons set forth above, Plaintiff's motion to remand should be granted.

4                                   Respectfully submitted,

5    Dated:  August 2, 2007              DILLINGHAM & MURPHY, LLP
                                         WILLIAM GAUS
6                                        BARABARA L. HARRIS CHIANG

7                                   By:  _____/s/ William Gaus_____
8                                        Attorneys for Plaintiff GEORGE CHEN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

**Page No.**

3  I.    INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

4  II.   ARGUMENT ..........................................................................................................................1

5        A.    Defendant denies that the law with respect to alternative theories exists. .............1

6        B.    Defendant's professed inability to distinguish between a claim and an alternative
              theory is entirely self-inflicted.............................................................................2

7
         C.    Defendant's purported "complete adjudication" rule is a slippery imaginary rule
8              supported only by Defendant's misstatements. ....................................................4

9        D.    Even if the federal policy allegations were regarded as a separate claim,
              Defendant disregards the law as to when a federal law which provides no private
10             cause of action confers federal jurisdiction over a state law claim. ........................6

11 III.   CONCLUSION ....................................................................................................................10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page No.**

### Cases

*Ayres v. General Motors Corp.*
  (11th Cir. 200) 234 F.3d 514 ................................................................... 8

*Baker v. BDO Seidman, LLP*
  (N.D. Cal. 2005) 390 F.Supp. 2d 919 ............................................... 3, 4, 5

*Barbara v. New York Stock Exchange, Inc.*
  (2nd Cir. 1996) 99 F.3d 49 .................................................................... 7

*Battle v. Seibels Bruce Ins. Co.*
  (4th Cir 2002) 288 F.3d 596 ............................................................... 7, 8

*Broder v. Cablevision System Corp.*
  (2d Cir. 2005), 418 F.3d 187 ...................................................... 3, 4, 5

*Cabazon Band of Mission Indians v. Wilson*
  (9th Cir. 1997) 124 F.3d 1050 .............................................................. 7

*Christianson v. Colt Industries Operating Corp.*
  (1988) 486 U.S. 800 .................................................................. 2, 3, 4, 5

*City of Huntsville v. City of Madison*
  (11th Cir. 1994) 24 F.3d 169 ................................................................. 8

*Empire Healthchoice Assurance, Inc. v. McVeigh*
  ___U.S.___, 126 S.Ct. 2121, 2136 ........................................................ 7

*In re Circular Thermostat*
  (N.D. Cal. 2005) ................................................................................ 2

*Merrell Dow Pharmaceuticals Inc. v. Thompson*
  (1986) 478 U.S. 804 .......................................................................... 6

*National Credit Reporting Association, Inc. v. Experian Information Solutions, Inc.*
  N.D. Cal. 2004) 2004 WL 188769 ...................................................... 2

*Rains v. Criterion Systems, Inc.*
  (9th Cir. 1996) 80 F.3d 339 ................................................................. 2

*Teamsters, Chauffeurs & Helpers v. Morton*
  (1964) 377 U.S. 252 ............................................................................ 7

*U.S. Express Lines Ltd. v. Higgins*
  (3rd Cir. 2002) 281 F.3d 383 ............................................................... 8

*Willy v. Coastal Corp.*
  (5th Cir. 1998) 855 F.2d 1160 ............................................................. 6

1

2
**Statutes**

3
29 U.S.C. 186(a) ................................................................................................................. 4, 9

4
29 U.S.C. 186(a)(2) ................................................................................................................ 9

5
47 U.S.C. § 543(d) ................................................................................................................. 3

6
California Corporations Code § 6812 ...................................................................................... 4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28