JEFFREY D. WOHL (Cal. State Bar No. 96838)
LAURA N. MONFREDINI (Cal. State Bar No. 221153)
JEFFREY P. MICHALOWSKI (Cal. State Bar No. 248073)
PAUL, HASTINGS, JANOFSKY & WALKER LLP
55 Second Street, 24th Floor
San Francisco, California 94105
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
lauramonfredini@paulhastings.com
jeffmichalowski@paulhastings.com

Attorneys for Defendant
United Way of the Bay Area

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE CHEN,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>UNITED WAY OF THE BAY AREA and, and DOES 1-10 inclusive,<br><br>　　　　　　Defendants. | No. C-07-02785-WHA (JCS)<br><br>**REPLY IN SUPPORT OF UNITED WAY'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S SECOND CAUSE OF ACTION FOR LIBEL**<br><br>Date:　　　　August 16, 2007<br>Time:　　　　8:00 a.m.<br>Courtroom:　9, 19th Floor<br>Judge:　　　Hon. William H. Alsup<br><br>Complaint filed:　April 26, 2007<br>Trial date:　　　None set yet |

# TABLE OF CONTENTS

*Page*

Table of Authorities ................................................................................................................... ii

I. INTRODUCTION ........................................................................................................... 1

II. PLAINTIFF CONSISTENTLY MISDIRECTS THE COURT TO THE HEIGHTENED STANDARDS OF *ARMENDARIZ*, WHICH ARE NOT APPLICABLE HERE ......................... 2

    A. *Armendariz* and Its Progeny Impose Heightened Standards for the Arbitration of Only Statutory or Public Policy Claims, Not Common-Law Claims ............................. 2

    B. Plaintiff Cannot Seriously Contend That His Second Cause of Action for Libel Warrants the *Armendariz* Heightened Standards ................................................ 5

III. UNDER THE CORRECT STANDARD, PLAINTIFF'S ARBITRATION AGREEMENT IS NEITHER PROCEDURALLY NOR SUBSTANTIVELY UNCONSCIONABLE ........................................................................................................... 6

    A. The Agreement Is Procedurally Conscionable ....................................................... 7

        1. Plaintiff Ignores the Fact That He Was Expressly Given the Opportunity to Modify the Terms of the Agreement; This Was Not the "Take it or Leave It" Contract at Issue in the Cases He Cites ................................................. 7

        2. The California Courts Have Not Held That a Plaintiff's Business Acumen Is Irrelevant to the Procedural Unconscionability Analysis ................................ 8

        3. United Way Was Under No Obligation to Provide Plaintiff with the AAA Arbitration Rules, Which Plaintiff Could Have Obtained for Himself or Gotten a Lawyer to Retrieve and Explain to Him .................................... 10

    B. The Agreement Is Also Substantively Conscionable ........................................... 11

        1. The Agreement Is Sufficiently Mutual ................................................. 11

        2. There Is No *Per Se* Right to Discovery in Arbitration, But Plaintiff's Agreement Does Not Preclude Discovery and the AAA Rules Empower the Arbitrator to Subpoena Witnesses and Documents .......................... 13

        3. Absent *Armendariz*, There Is Nothing Unconscionable About Plaintiff Bearing Half of the Arbitration Costs After the First $1,000 ............................... 14

IV. TO THE EXTENT THAT ANY PROVISION IS DETERMINED TO BE PROCEDURALLY UNCONSCIONABLE, THE PROPER APPROACH IS TO SEVER THE OFFENDING PROVISION IN ORDER TO SAVE THE PARTIES' AGREEMENT TO ARBITRATE ................................................................. 14

V. PLAINTIFF'S FEAR OF INCONSISTENT ADJUDICATIONS IGNORES LEGAL AUTHORITY AND PROCEDURES THAT WOULD PREVENT SUCH INCONSISTENCY .......................................................................................................... 14

VI. CONCLUSION ............................................................................................................. 15

**TABLE OF AUTHORITIES**

*Page*

**Cases**

*Abramson v. Juniper Networks, Inc.*,
 115 Cal. App. 4th 638 (2004) ..........................................................................................7, 8

*Am. Software, Inc. v. Ali*,
 46 Cal. App. 4th 1386 (1996) .........................................................................................7, 11

*Armendariz v. Health Psychcare Services, Inc.*,
 24 Cal. 4th 83 (2000) .......................................................................................1, 2, 5, 13, 14

*Banco Do Brasil v. Latian*,
 234 Cal. App. 3d 973 (1991) ..............................................................................................10

*Blake v. Ecker*,
 93 Cal. App. 4th 728 (2001) ...............................................................................................11

*Boghos v. Certain Underwriters of Lloyd's of London*,
 36 Cal. 4th 495 (2005) .......................................................................................3, 5, 6, 7, 14

*Broughton v. Cigna Healthplans*,
 21 Cal. 4th 1066 (1999) ................................................................................................13, 15

*Circuit City Stores, Inc. v. Ahmed*,
 283 F.3d 1198 (9th Cir. 2002) ..............................................................................................7

*Cole v. Burns Intern. Security Services*,
 105 F.3d 1465 (D.C. Cir. 1997) .......................................................................................2, 3

*Crisci v. Security Insurance Co.*,
 6 Cal. 2d 425 (1976) ............................................................................................................4

*Dean Witter Reynolds Inc. v. Byrd*,
 470 U.S. 213 (1985)............................................................................................................15

*Dunham v. Environmental Chemical Corp.*,
 2006 WL. 2374703 (N.D. Cal. Aug. 16, 2006) ..................................................................10

*Erlich v. Menezes*,
 1 Cal. 4th 543 (1999) ............................................................................................................4

*Flores v. Transamerica HomeFirst, Inc.*,
 93 Cal. App. 4th 846 (2001) .................................................................................................7

*Giuliano v. Inland Empire Personnel, Inc.*,
 149 Cal. App. 4th 1276 (2007) .........................................................................................6, 7

*Graham v. Scissor-Tail, Inc.*,
 28 Cal. 3d 807 (1981) .......................................................................................................8, 9

*Gray v. Conseco, Inc.*,
 2000 U.S. Dist. LEXIS 14821 (C.D. Cal. Sept. 29, 2000)..................................................12

*Green Tree Fin. Corp. v. Wampler*,
 749 So. 2d 409 (Ala. 1999).................................................................................................12

*Han v. Mobil Oil Corp.*,
 73 F.3d 872 (9th Cir. 1995) ................................................................................................12

# TABLE OF AUTHORITIES
*(cont'd)*

*Page*

*Harper v. Ultimo*,
  113 Cal. App. 4th 1402 (2003) ..................................................................................10, 15

*Harris v. Green Tree Fin. Corp.*,
  183 F.3d 173 (3d Cir. 1999) .................................................................................................12

*Herbert v. Lankershim*,
  9 Cal. 2d 409 (1937) ...........................................................................................................11

*Howsam v. Dean Witter Reynolds, Inc.*,
  537 U.S. 79 (2002) ..............................................................................................................12

*Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*,
  133 Cal. App. 4th 396 (2005) ........................................................................................5, 13

*Jones v. Humanscale Corp.*,
  130 Cal. 4th 401 (2005) ......................................................................................................14

*Kinney v. United HealthCare Services Inc.*,
  70 Cal. App. 4th 1322 (1999) .............................................................................................10

*Lackey v. Green Tree Fin. Corp.*,
  330 S.C. 388, 498 S.E.2d 898 (1998) ................................................................................12

*Little v. Automobile Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) ..................................................................................................3, 14

*Martinez v. Master Protection Corp.*,
  118 Cal. App. 4th 107 (2004) .............................................................................................12

*McManus v. CIBC World Markets Corp.*,
  109 Cal. App. 4th 76 (2003) .........................................................................................11, 14

*Mercuro v. Superior Court*,
  96 Cal. App. 4th 167 (2002) ...............................................................................................11

*Moradi-Shalal v. Fireman's Fund Ins. Companies*,
  6 Cal. 3d 287 (1988) .............................................................................................................4

*Nagrampa v. Mailcoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ..............................................................................................9

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal. App. 4th 1267 (2004) .............................................................................................9

*O'Hare v. Municipal Resource Consultants*,
  107 Cal. App. 4th 267 (2003) .............................................................................................11

*In re Pate*,
  198 B.R. 841 (S.D. Ga. 1996) ............................................................................................12

*Royal Globe Ins. Co. v. Superior Court*,
  23 Cal. 3d 880 (1979) ...........................................................................................................4

*Royer v. Steinberg*,
  90 Cal. 3d 490 (1977) .......................................................................................................5, 6

*Soltani v. W. & S. Life Ins. Co.*,
  258 F.3d 1038 (9th Cir. 2001) ............................................................................................12

# TABLE OF AUTHORITIES
(*cont'd*)

*Page*

*Szetla v. Discovery Bank*,
   97 Cal. App. 4th 1094 (2002) ...................................................................................................7

*Tameny v. Atlantic Richfield Co.*,
   7 Cal. 3d 167 (1980) ..................................................................................................................3

*Wayne v. Staples, Inc.*,
   135 Cal. App. 4th 466 (2005) ....................................................................................................8

**Statutes**

Cal. Civ. Code
   § 3513 ..........................................................................................................................................5

Cal. Code Civ. Proc.
   § 1281 ..........................................................................................................................................6

9 U.S.C. § 1 ......................................................................................................................................6

42 U.S.C. § 2000e *et seq.* ................................................................................................................3

## I.     INTRODUCTION

In his opposition to United Way's motion to compel arbitration of his Second Cause of Action for Libel, plaintiff repeatedly accuses United Way of "misstating" or "ignoring" the law governing the enforceability of arbitration agreements. Yet it is plaintiff who has grossly distorted the legal principles governing this motion, which United Way has correctly cited and applied. Consider:

▪ By the very terms of the California Supreme Court's opinion in *Armendariz v. Health Psychcare Services, Inc.,* 24 Cal. 4th 83 (2000), as well as how *Armendariz* subsequently has been applied by the Supreme Court and lower courts, the heightened standards for enforcing arbitration agreements apply only to employment claims brought under a statute (such as the California Fair Employment and Housing Act) or based on a public policy (such as plaintiff's First Cause of Action for Wrongful Termination in Violation of Public Policy). Not only has no reported case applied *Armendariz* to a common-law claim like libel, the courts have expressly refused to apply *Armendariz* to tort claims, including libel. *Yet, most of plaintiff's opposition cites to Armendariz as though that is the applicable precedent here.* Contrary to plaintiff's suggestion, United Way does not contend that a procedural/substantive unconscionability analysis does not apply here, but that analysis must be based on the general unconscionability standards applicable to any contract under California law, not the *Armendariz* heightened standards that are reserved for the arbitration of statutory and public policy claims.

▪ Plaintiff says that his self-described executive experiences and accomplishments are irrelevant to whether the agreement was procedurally unconscionable. *But California authorities have not held that where—as here—there is no element of economic pressure, the business acumen of the employee is irrelevant to whether the agreement was procedurally unconscionable.* Here, plaintiff cannot have it both ways. In the résumé he submitted to United Way to obtain his employment, plaintiff bragged of having run mission-critical departments, negotiated multi-million-dollar contracts, and turned around companies from multi-million dollar losses to multi-million-dollar profits. With that level of experience and ability, plaintiff cannot honestly contend that he was helpless to negotiate a different deal with United Way than the one presented to him, including the arbitration agreement.

▪ Plaintiff also portrays his arbitration agreement as having been presented to him on a

take-it-or-leave-it basis. But on this point plaintiff relies solely on the inadmissible hearsay statement of an unidentified individual who was not even a United Way employee, much less a member of United Way's upper management. In so doing, plaintiff simply ignores the plain language of the agreement which informed him that he was free to take issue with any part of the agreement and advised him to consult with an attorney before signing it.

- Finally, plaintiff attacks parts of the arbitration agreement as one-sided, and argues they render the entire agreement unenforceable. *But under the correct standard—and not the inapplicable Armendariz standard urged by plaintiff—those provisions are not unconscionable. Moreover, California courts—especially outside of the Armendariz context—have long enforced the state policy in favor of arbitration by severing specific unenforceable terms in order to salvage the entire agreement.*

Once the Court reviews for itself the relevant legal authorities which are erroneously presented by plaintiff, not United Way, the proper disposition of this motion will become clear: Plaintiff should be held to his arbitration agreement, and United Way's motion to compel arbitration should be granted.

## II. PLAINTIFF CONSISTENTLY MISDIRECTS THE COURT TO THE HEIGHTENED STANDARDS OF *ARMENDARIZ*, WHICH ARE NOT APPLICABLE HERE

### A. *Armendariz* and Its Progeny Impose Heightened Standards for the Arbitration of Only Statutory or Public Policy Claims, Not Common-Law Claims.

Contrary to plaintiff's repeated mischaracterization (*see* Oppn. at 5-6, 10-12), the California Supreme Court in *Armendariz v. Foundation Health Psychcare Services, Inc.* did not reverse long-standing state and federal policies favoring enforcement of arbitration agreements and create, in their place, a heightened standard for the arbitration of all employment-related claims. Rather, *Armendariz* imposed its heightened standards on a *single* category of claims: claims brought under the California Fair Employment and Housing Act ("FEHA"). *See* 24 Cal. 4th at 103-04. Indeed, in formulating its heightened standards, the *Armendariz* court relied on *Cole v. Burns Intern. Security Services*, 105 F.3d 1465, 1482 (D.C. Cir. 1997), which addressed the arbitration of a statutory claim under an FEHA analogue, Title VII of the Civil Rights Act of 1964. The *Armendariz* court reasoned that FEHA or Title VII claims are "non-waivable" because they protect "public rights" and therefore are deserving of extra protection when it comes to pre-dispute arbitration agreements made a condition of employment. 24 Cal. 4th at 100-01. Nowhere in the *Armendariz* opinion (or, for that matter, in *Cole*) did the court

suggest that the same heightened standards apply to the arbitration of common-law claims like libel.

The California Supreme Court took its *Armendariz* reasoning one step further in *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064 (2003), when it held that the *Armendariz* heightened standards also would apply to claims for wrongful termination in violation of public policy. The court explained that like an FEHA claim, a claim for wrongful termination in violation of public policy involved non-waivable rights because, under California law, a public policy claim must be tethered to fundamental policies set forth in constitutional or statutory provisions. *Id.*, at 1078. As in *Armendariz* itself, nowhere in *Little* did the court suggest that the *Armendariz* heightened standards extend beyond statutory or public-policy claims to common-law claims like libel.

What the Supreme Court made obvious by its omission in *Armendariz* and *Little*, it made explicit in *Boghos v. Certain Underwriters of Lloyd's of London*, 36 Cal. 4th 495 (2005). In *Boghos*, an insured sued an insurer to collect benefits under an insurance policy. The insured asserted both contract and tort claims. The insurer sought to compel arbitration of the insured's claims; the trial court denied the motion, and the court of appeal affirmed the denial, specifically citing to *Armendariz* and *Little* as rendering the arbitration agreement unenforceable because the agreement imposed costs on the insured that he would not have pay in a court proceeding. *Id.*, at 489-501. The Supreme Court *reversed*:

> In *Armendariz*…we set out the conditions under which an employer can lawfully require its employees to arbitrate claims arising under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) (FEHA). Through the FEHA, we reasoned, the Legislature created substantive and procedural rights not just for the benefit of individuals but also for public purposes; accordingly, those statutory rights are unwaivable under Civil Code sections 1668 and 3513. … To ensure that employer-mandated arbitration agreements would not become vehicles for the waiver of FEHA rights, we held that such agreements are enforceable only if they provide for neutral arbitrators, more than minimal discovery, a written award, and all of the types of relief that would otherwise be available in court and, in addition, "'*do not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.*'" (…, italics added, quoting *Cole v. Burns Intern. Security Services* [105 F.3d 1465, 1482 (D.C. Cir. 1997)].) We borrowed these requirements from an analogous federal decision, *Cole*, which had in turn formulated them to ensure that employer-mandated arbitration agreements did not violate title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.).
>
> In *Little*…we extended *Armendariz*…and applied its requirements to employer-mandated arbitration of tort claims for wrongful discharge in violation of public policy (*i.e.*, claims under *Tameny v. Atlantic Richfield Co.*, [27 Cal. 3d 167 (1980)]). Justifying the extension, we reasoned that *Tameny* claims, even though not statutory, are nevertheless "almost by definition unwaivable"…because they seek to enforce public policies that are carefully tethered to fundamental policies delineated in constitutional or statutory

> provisions…. To extend the *Armendariz* requirements to *Tameny* claims was also consistent with the object of those requirements, which is "to ensure minimum standards of fairness in arbitration so that employees subject to mandatory arbitration agreements can vindicate their public rights in an arbitral forum." …
>
> Boghos asks us to extend the holdings of *Armendariz...* and *Little*…to insurance disputes and to declare the policy's arbitration clause unenforceable because it requires him to share with the Underwriters the costs of arbitration and the arbitrators' fees. We find no merit in the request. Even if the holdings in *Armendariz* and *Little* might conceivably be extended beyond the employment context to cover other types of unwaivable claims based on or tethered to statutes, Boghos's claims for nonpayment of benefits and breach of the covenant of good faith and fair dealing cannot properly be so described. Boghos's claim that the Underwriters have failed to pay benefits under the policy is a claim for breach of contract, pure and simple. His claim that the Underwriters have, by failing to pay, violated the covenant of good faith and fair dealing may properly be described either as a tort claim (*Crisci v. Security Ins. Co.*, [66 Cal. 2d 425, 433–34 (1976)]) or as a special type of contract claim for which we allow tort damages (*ibid.*; *Erlich v. Menezes*, [21 Cal. 4th 543, 551–52 (1999)]). While insurance bad faith claims were for a time thought to have a statutory basis in the Unfair Practices Act (Ins. Code, § 790 *et seq.*), we definitively rejected that position in *Moradi-Shalal v. Fireman's Fund Ins. Companies*, [46 Cal.3d 287, 304 (1988)], and expressly overruled prior contrary authority (*ibid.*, overruling *Royal Globe Ins. Co. v. Superior Court*, 23 Cal. 3d 880 (1979)]). For the same reason, insurance bad faith claims also cannot properly be described as tethered to a statute, in the sense that *Tameny* claims subject to arbitration under *Little* are necessarily "'based on policies "carefully tethered to fundamental policies…delineated in constitutional or statutory provisions…."'" … While the business of insurance is sufficiently affected with a public interest to justify its regulation by the state (*see* Ins. Code, § 680 *et seq.*), as Boghos observes, the fact of regulation does not suffice to demonstrate that any given insurance-related claim entails an unwaivable statutory right, or that any given claim seeks to enforce a public policy articulated in a statute.
>
> In any event, we have not extended the *Armendariz/Little* cost-shifting rule to common law claims generally. The rule is a judicially created exception to Code of Civil Procedure section 1284.2, which provides that the parties to an arbitration agreement do share costs "[u]nless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree…." We justified our creation of the exception in *Armendariz*…by reasoning that section 1284.2 "is a default provision, and the agreement to arbitrate a statutory claim [*e.g.*, a FEHA claim] is implicitly an agreement [by the employer] to abide by the substantive remedial provisions of the statute" (*Armendariz*…) and to pay "all types of cost that are unique to arbitration." … The same reasoning fairly covers common law *Tameny* claims, which must be carefully tethered to statutory or constitutional provisions (*see Little*…), but not to common law claims generally. To extend *Armendariz* to the arbitration of claims not carefully tethered to statutory or constitutional provisions would seem an arbitrary refusal to enforce section 1284.2, a legislative act, and thus raise concerns about judicial policymaking similar to those that led us to require a statutory or constitutional basis for *Tameny* claims. …

*Id.*, at 506-08 (citations and footnotes omitted). This excerpt from the *Boghos* opinion makes clear that the *Armendariz* heightened standards apply only to a narrow set of employment claims—those arising under or based on a statute or constitutional provision—and that even if a claim sounds in tort, such as the insured's claim for breach of covenant of good faith and fair dealing in *Boghos*, *Armendariz* still

does not apply because the claim does not vindicate a public right and therefore is waivable.

### B. Plaintiff Cannot Seriously Contend That His Second Cause of Action for Libel Warrants the *Armendariz* Heightened Standards.

Following *Boghos*, the California Court of Appeal has expressly held that defamation claims—such as libel—are not subject to the *Armendariz* heightened standards. *See Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App. 4th 396, 416 (2005) (expressly declining to extend *Armendariz* standards to claims for defamation).[1] Plaintiff provides the Court with no cognizable basis why *Mailbox Center Owners* and *Boghos* should be disregarded and his Second Cause of Action for Libel should be subjected to the *Armendariz* heightened standards.

Libel is a distinctly *personal* tort, and not at all analogous to the *public-rights* claims protected by *Armendariz* and *Little*. The *Armendariz* court made clear that its exceptional safeguards are necessary only to prevent arbitration agreements from chiseling away at "unwaivable rights," those rights where protection of individuals is, at least in part, a vehicle for the vindication of a larger public interest. "To extend *Armendariz* to the arbitration of claims not carefully tethered to statutory or constitutional provisions would seem an arbitrary refusal to enforce section 1284.2, a legislative act, and thus raise concerns about judicial policymaking similar to those that led us to require a statutory or constitutional basis for *Tameny* claims." *Boghos*, 36 Cal. 4th at 508. *See also* Cal. Civ. Code § 3513: "Anyone may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement."[2]

There is no comparison between the public interest protected by FEHA, Title VII, and other statutory or constitutional provisions, and the distinctly personal interests protected by the tort of libel. Indeed, that libel is a distinctly private tort is confirmed by the fact that consent to publication of an otherwise libelous statement is a complete defense to the claim. *Royer v. Steinberg*, 90 Cal. 3rd 490,

---

[1] Plaintiff cites to *Mailbox Center* Owners to argue that because *Armendariz* is "potentially applicable if franchisee's claims involved rights deemed unwaivable under Civil Code sections 1668 and 3513," Oppn. at 12, *Armendariz* should be extended to his libel claim. Plaintiff, who spent much of his opposition falsely accusing United Way of mis-citing the applicable authorities, thus proceeds to mis-cites *Mailbox Center Owners* when the case holds exactly contrary to his position. Plaintiff owes the Court an apology for his mis-citation, and United Way an apology for his hypocritical posturing.

[2] *See also Armendariz*, 24 Cal. 4th at 100 ("so long as [unlawful discrimination] exists, we are all demeaned.").

498 (1977) (upholding judgment as matter of law where plaintiff consented to publication of libel). Were the tort of libel designed to protect a public purpose, such waiver would not be permissible. Additionally, plaintiff's suggestion that the requirement of malice to overcome the interested-party privilege somehow renders libel non-waivable has been expressly rejected:

> The privilege conferred by the consent of the person about whom the defamatory matter is published is absolute. The protection given by it is complete, and is not affected by the ill will or personal hostility of the publisher or by any improper purpose for which he may make the publication. By its very definition, an absolute privilege cannot be overcome by a showing of actual malice; malice is simply not the proper subject of inquiry in such a case.

*Id.* Accordingly, the *Armendariz* heightened standards do not apply to claims for libel.

Making matters worse, plaintiff's argument for applying *Armendariz* to his libel cause of action ignores the clear requirements of both California and federal law regarding contractual arbitration. The California Arbitration Act provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code Civ. Proc. § 1281. In this respect, California follows the Federal Arbitration Act, which also provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 1.

Plaintiff asks this Court to ignore these clear state and federal authorities requiring the enforcement of arbitration agreements. That is exactly what the insured asked the Supreme Court to do in *Boghos*, and the court refused. 36 Cal. 4th at 508. This Court may not grant plaintiff's invitation to disregard California law as pronounced by the state Supreme Court. *Armendariz* is inapplicable to plaintiff's Second Cause of Action for Libel.

### III. UNDER THE CORRECT STANDARD, PLAINTIFF'S ARBITRATION AGREEMENT IS NEITHER PROCEDURALLY NOR SUBSTANTIVELY UNCONSCIONABLE

Because *Armendariz* does not apply to plaintiff's libel cause of action, the proper analysis is whether, under the conscionability standards generally applicable to contracts under California law, plaintiff's arbitration agreement is unenforceable. In *Giuliano v. Inland Empire Personnel, Inc.,* 149 Cal. App. 4th 1276, 1284 (2007), the court explained that because "the right to arbitration depends upon

1  contract, a petition to compel arbitration is simply a suit in equity seeking performance of that contract."
2  Therefore, "only generally applicable contract defenses, such as fraud, duress, or unconscionability, may
3  be applied to invalidate arbitration agreements…." *Id.* at 1285; *see also Boghos v. Certain Underwriters*
4  *at Lloyd's of London*, 36 Cal. 4th at 501-02 ("When a party to an arbitration agreement challenges the
5  agreement as unenforceable, we decide the issue based on the same state law standards that apply to
6  contracts generally. The … [FAA] creates a presumption in favor of arbitrability and permits courts to
7  refuse to enforce agreements to arbitrate only "upon such grounds as exist at law or equity for the
8  revocation of any contract."); *Abramson v. Juniper Networks, Inc.*, 115 Cal. App. 4th 638 (2004)
9  ("where the plaintiff asserts private rights rather than (or in addition to) unwaivable public rights, the
10 agreement to arbitrate those claims is tested only against *conscionability* standards").

11 Here, plaintiff does not dispute the existence of his arbitration agreement. Instead, he relies
12 entirely on the claim that his agreement is unconscionable. To succeed on an unconscionability theory,
13 plaintiff must show that the agreement is *both* procedurally and substantively unconscionable. *Am.*
14 *Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1390 (1996) ("California courts generally require a showing
15 of both procedural and substantive unconscionability at the time the contract was made."). Because
16 plaintiff has shown neither, his arbitration agreement is enforceable.

**A.   The Agreement Is Procedurally Conscionable.**

     **1.   Plaintiff Ignores the Fact That He Was Expressly Given the Opportunity to Modify the Terms of the Agreement; This Was Not the "Take it or Leave It" Contract at Issue in the Cases He Cites**

20 In order to avoid the holdings of *Szetla v. Discovery Bank*, 97 Cal. App. 4th 1094 (2002), and
21 *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002), which hold that non-adhesory
22 contracts are unlikely to be procedurally unconscionable, plaintiff asserts that his arbitration agreement
23 was a "take-it-or-leave-it" contract. It was not. A contract of adhesion is "a standardized contract,
24 imposed upon the subscribing party without an opportunity to negotiate the terms." *Flores v.*
25 *Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001). Here, by contrast, plaintiff's
26 agreement, on its face, *expressly* provided plaintiff the opportunity to negotiate and modify its terms:

> If you agree that [the Agreement] sets forth our complete understanding, and that nothing of any importance has been omitted, please sign both copies. . . . *If you believe some important point has been inadvertently omitted, please advise me accordingly so that a*

> *new agreement can be drafted.*

McDonnell Decl., ¶ 4, Exh. A (emphasis added). The agreement later *repeated* its invitation to plaintiff to modify its terms:

> *If you believe other promises have been made previously, tell us about them before you sign and, if we agree, we will include them.*

*Id.* (emphasis added). The agreement even advised plaintiff to seek the advice of an attorney before accepting it:

> *Read this Agreement carefully before signing it, and consult an attorney, if you desire, since it will be the only agreement between us.*

*Id.* (emphasis supplied).

Where, as here, a contracting party had a meaningful choice concerning whether or not to agree to arbitrate his claims, there is no procedural unconscionability. *See Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2005) ("There can be no 'oppression' establishing procedural unconscionability, even assuming unequal bargaining and an adhesion contract, where the customer has meaningful choices."). Here, plaintiff was not presented with an adhesory contract: he was expressly provided the opportunity to negotiate for a modification of any of the contractual terms of his employment agreement, including his arbitration agreement. That he chose not to do so does not render the agreement adhesory.

### 2. The California Courts Have Not Held That a Plaintiff's Business Acumen Is Irrelevant to the Procedural Unconscionability Analysis

Even though when he wanted to be hired, he bragged to United Way about his executive business experience and acumen, plaintiff now attempts to treat his credentials as irrelevant by citing to *Abramson v. Juniper Networks, Inc.,* 115 Cal. App. 4th 638, and *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807 (1981), for the inaccurate proposition that "the California courts have squarely rejected the proposition that a person's wide business experience and skills defeat a claim of procedural unconscionability." Opptn. at 7. There is no such blanket rule. As with his other arguments, plaintiff again misstates and misapplies the law.

To be sure, both *Abramson* and *Scissor-Tail* involved sophisticated plaintiffs. However, that is the extent to which those cases are analogous to this one. In both *Abramson* and *Scissor-Tail*, the

arbitration provisions were presented to the plaintiffs as "non-negotiable" provisions. Specifically, in *Abramson*, the arbitration agreement was presented to the plaintiff as a non-negotiable condition of employment. *Id.* at 663-64. In *Scissor-Tail*, Bill Graham, the renowned music promoter, successfully defeated an arbitration agreement, not because his business acumen was irrelevant, but because an industry-wide collective bargaining provision affecting all artists with whom he might contract expressly required arbitration. *Id.* Without agreeing to arbitrate, Graham could not contract with anyone. Thus, the court held that Graham had no meaningful choice but to enter into the arbitration agreement if he wished to do any business in his industry; in that context, he "was reduced to the humble role of adherent." *Id.* at 818. Precisely the opposite is true here: the negotiability of *all* of the contract's provisions, including its arbitration provisions, was specified on the face of the contract.[3]

Here, plaintiff does not contend—nor can he, given his representations on the résumé he submitted to United Way to gain employment—that he was naïve about business matters. According to plaintiff, before joining United Way he ran mission-critical departments, negotiated multi-million-dollar contracts, and was responsible for turning around companies from multi-million-dollar losses to multi-million-dollar profits. *See* Motion to Compel Arbitration at 3. Given the numerous disclaimers on the agreement itself, inviting plaintiff to negotiate over its terms and consult with an attorney, plaintiff was especially well-positioned to negotiate different terms if he wished.

The inherent weakness of plaintiff's position is underscored by his vain attempt to override the actual cautionary language of his agreement by attributing to a nameless PipeVine employee the alleged direction that he "had to sign these documents without modification." Even putting aside the obvious inadmissibility of this alleged statement,[4] it could not have overridden the express language of the

---

[3] Plaintiff cites to two additional cases—*Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267 (2004), and *Nagrampa v. Mailcoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006)—in an attempt to downplay that both his business sophistication and the expressly modifiable contract he signed distinguish his case. As with *Scissor-Tail and Abramson*, both cases involve situations where the arbitration agreement was presented to the plaintiff as non-negotiable. In *Nyulassy*, the plaintiff, a non-executive level manager who had been unemployed for nearly three years, signed an employment agreement, the terms of which were expressly "non-negotiable" on the face of the agreement. *Nyulassy*, 120 Cal. App. 4th at 1284, 1285. In *Nagrampa*, a first-time franchise owner's attempt at modifying a contractual term was expressly rebuffed, and the defendant *conceded* that it had presented the contract on a take-it-or-leave-it basis. 469 F.3d at 1283-84. No such analogous situation exists here.

[4] United Way files with this reply its objections to the Chen Declaration, noting that the PipeVine statement he alleges is inadmissible because it lacks foundation, is irrelevant, and is inadmissible

1  agreement which set forth plaintiff's ability to negotiate its terms and provided that once signed, "it will
2  be the only agreement between us."  McDonnell Decl., ¶ 5, Exh. B.  This integration clause precludes
3  plaintiff's effort to change the terms of the agreement with parol evidence.  *Banco Do Brasil v. Latian*,
4  234 Cal. App. 3d 973, 1001 (1991) ("If an [integration] clause is adopted and used by the parties, it may
5  well be conclusive on the issue of integration," thus precluding resort to extrinsic evidence.).

      **3.    United Way Was Under No Obligation to Provide Plaintiff with the AAA Arbitration Rules, Which Plaintiff Could Have Obtained for Himself or Gotten a Lawyer to Retrieve and Explain to Him.**

8        Finally, plaintiff argues that United Way should have provided him with the American
9  Arbitration Association Voluntary Labor Arbitration Rules ("AAA Rules") along with the agreement,
10 and its failure to do so rendered the agreement procedurally unconscionable.  The California law of
11 unconscionability imposes no requirement that arbitration rules referenced in an arbitration agreement
12 must be provided to a party before that party signs the agreement.  If plaintiff did not understand what
13 the AAA Rules entailed, he was free to obtain those rules and read them for himself, or have his lawyer
14 obtain them and explain them to him.

15       Two cases cited by plaintiff to support his argument are inapposite:  *Dunham v. Environmental*
16 *Chemical Corp.*, 2006 WL 2374703 (N.D. Cal. Aug. 16, 2006); *Harper v. Ultimo*, 113 Cal. App. 4th
17 1402 (2003).  The arbitration agreement at issue in *Durham* was held procedurally unconscionable
18 because the agreement did not specify *which* AAA rules would govern the arbitration.  2006 WL
19 2374703 at *11.  By contrast, plaintiff's arbitration agreement is explicit that the AAA Rules, as
20 amended January 1, 1984, govern.  McDonnell Decl., ¶ 5, Exh. B.  The arbitration agreement at issue in
21 *Harper* also did not attach the applicable rules (the Better Business Bureau's rules for arbitration), but in
22 context it is clear that what sunk that agreement was the fact that the rules were *substantively*
23 unconscionable: the BBB rules set an absolute *maximum* recovery of $2,500 for all claimed losses and
24 property damage, even though that was miniscule compared to the landscaping costs at issue.  *Id.* at
25 1406.  Here, in stark contrast, the AAA Rules impose no such limitation on recoverable damages, nor

---

27 hearsay.  United Way also objects to plaintiff's recitation of his allegations against United Way after he joined the agency (*see* Oppt n. at 3-4) since they are irrelevant to the circumstances of his acceptance of
28 his arbitration agreement when he accepted employment.

any limit on plaintiff's remedies generally.[5]

### B. The Agreement Is Also Substantively Conscionable.

Even if a party demonstrates procedural unconscionability—which, as shown above, plaintiff does not do—a party seeking to void a contract also must show substantive unconscionability. *See Am. Software Inc.*, 46 Cal. App. at 1390. Substantive unconscionability requires a finding by the court that the agreement's provisions are so overly harsh as to "shock the conscience." *See id.,* at 1391 ("With a concept as nebulous as 'unconscionability' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience."); *see also Herbert v. Lankershim*, 9 Cal. 2d 409, 484 (1937) (provision unconscionable only if "no man in his senses, and not under delusions would make [the deal] on the one hand, and that no honest and fair man would accept on the other."). Here, there is nothing shocking about plaintiff's arbitration agreement. Indeed, plaintiff's challenges to the agreement—that allegedly it is non-mutual, does not provide for discovery, and does not provide for 100% cost-shifting—are either unfounded or insufficient to render the agreement substantively unconscionable.

#### 1. The Agreement Is Sufficiently Mutual.

Plaintiff strains credulity by arguing that his arbitration agreement is lacking in mutuality; the contract provides, on its face, that United Way also is bound to arbitrate its disputes with plaintiff:

> In order to provide our employees and The United Way with an inexpensive, swift and fair method for resolving *any legal disputes which may arise between them concerning the application or termination of this agreement*, The United Way agrees, and by signing this letter you also agree, that binding arbitration before a neutral arbitrator, rather than court litigation, shall be the sole method *for resolving disputes*.

McDonnell Decl., ¶ 5, Exh. B (emphasis supplied). This makes clear that United Way is as bound as plaintiff to arbitrate disputes between the parties.

---

[5] Given his argument about the unattached AAA rules, plaintiff curiously also cites to several cases holding that surprise is not required to show procedural unconscionability. See Opptn. at 9 n.2. In any event, these cases are also inapposite because, in each, the courts based their findings of procedural unconscionability on the fact that the agreements in question were presented on a take-it-or-leave-it basis. *See Kinney v. United HealthCare Services Inc.*, 70 Cal. App. 4th 1322, 1329 (1999); *McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 91 (2003); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 174 (2002); *Blake v. Ecker*, 93 Cal. App. 4th 728, 742 (2001); *O'Hare v. Municipal Resource Consultants*, 107 Cal. App. 4th 267, 283 (2003).

Furthermore, even if only plaintiff were bound to arbitrate while United Way were not, under the general conscionability standards for contracts, there is nothing substantively unconscionable about an arbitration agreement that requires only one party to arbitrate. *See*, *e.g.*, *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 183 (3d Cir. 1999); *Gray v. Conseco, Inc.*, 2000 U.S. Dist. LEXIS 14821, at *13 (C.D. Cal. Sept. 29, 2000); *In re Pate*, 198 B.R. 841, 844 (S.D. Ga. 1996); *Green Tree Fin. Corp. v. Wampler*, 749 So. 2d 409, 416 (Ala. 1999); *Lackey v. Green Tree Fin. Corp.*, 330 S.C. 388, 498 S.E.2d 898, 904-05 (1998). "Two main reasons have been advanced for this rule. First, under general principles of contract law, a non-mutual contract is valid and not unconscionable so long as there some consideration on both sides. Second, a contrary rule would impose a special burden on agreements to arbitrate and therefore conflict with the federal policy favoring arbitration." *Gray v. Conseco, Inc.*, 2000 U.S. Dist. LEXIS 14821, at *14.

Plaintiff's alternative argument about lack of mutuality is his complaint that under the agreement he must initiate arbitration within six months after the dispute arises, while, he says, United Way is not subject to the same limitations period.[6] However, it is not yet decided whether this actually is a one-sided provision; the scope and effect of an arbitral limitations period is up to the arbitrator, who can interpret the contract and consider equitable arguments for applying or waiving a limitations defense. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002) ("issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."). Should United Way assert a claim against plaintiff in arbitration (and as of now United Way has no plan to do so[7]), it will be up to

---

[6] Plaintiff does not contend that a six-month limitations period is *per se* unconscionable, nor could he. Under California law, the parties may contract for a shorter limitations period to assert non-statutory claims. *See Soltani v. W. & S. Life Ins. Co.*, 258 F.3d 1038, 1043 (9th Cir. 2001) ("California permits contracting parties to agree upon a shorter limitations period for bringing an action than prescribed by statute, so long as the time allowed is reasonable"), *citing Han v. Mobil Oil Corp.,* 73 F.3d 872, 877 (9th Cir. 1995). Nor is his citation to *Martinez v. Master Protection Corp.*, 118 Cal. App. 4th 107 (2004) meaningful, since that case, which disapproved of a shortened limitations period, applied the *Armendariz* heightened standards to an FEHA claim. *Id.* at 117. As thoroughly discussed in section II, *supra*, *Armendariz* has no application to plaintiff's Second Cause of Action for Libel.

[7] Prior to bringing this motion, United Way demanded that plaintiff return the agency's laptop computers that he wrongfully retained after leaving United Way and threatened to bring a counterclaim if plaintiff did not do so. *See* Declaration of William Gaus in Opposition to Petition to Compel Arbitration, ¶ 2, Exh. A. (Contrary to plaintiff's suggestion, United Way did not say that it would sue plaintiff in court rather than in arbitration.) Because plaintiff ultimately returned the laptops, United

1  the arbitrator to decide whether the six-month limitations period applies to the claim.

2  The more important point, however, is that even if the limitations provision were one-sided, that would be insufficient to render the agreement substantively unconscionable. Under the authorities cited at 12 *supra*, if an agreement that requires only one party to arbitrate while permitting the other party to sue is not substantively unconscionable, then *a fortiori* an agreement that requires both sides to arbitrate but gives one side more time to do so than the other does not "shock the conscience." Indeed, even under the *Armendariz* heightened standards, the Supreme Court recognized that only a "modicum" of mutuality is required and there could be justification for terms that favor one party and disfavor the other. *Armendariz,* 24 Cal. 4th at 117-18. Here, requiring plaintiff to initiate arbitration within six months makes sense because, among other reasons, as part of a resolution of a wrongful termination dispute like this one, plaintiff could be reinstated to his former position either by the parties' agreement or by the arbitrator. That could be difficult or impossible with the passage of time. No parallel concern would exist if United Way asserted a claim against plaintiff.

### 2. There Is No *Per Se* Right to Discovery in Arbitration, But Plaintiff's Agreement Does Not Preclude Discovery and the AAA Rules Empower the Arbitrator to Subpoena Witnesses and Documents.

Plaintiff also complains that his arbitration agreement does not provide for discovery. But absent the *Armendariz* standards there is no absolute right to discovery. *See Independent Ass'n of Mailbox Center Owners, Inc. v. Superior Court*, 133 Cal. App. 4th at 412 ("Parties to arbitration voluntarily trade the formal procedures and the opportunity for greater discovery and appellate review for 'the simplicity, informality, and expedition of arbitration.'"), *citing Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1080 (1999). Moreover, nothing in his arbitration agreement precludes the parties from taking discovery, and the AAA Rules grant the arbitrator the authority to "subpoena witnesses and documents" either "independently or upon the request of any party." *See* Wohl Decl., ¶ 3, Exh. B.

### 3. Absent *Armendariz*, There Is Nothing Unconscionable About Plaintiff Bearing Half of the Arbitration Costs After the First $1,000.

Finally, absent the *Armendariz* standards, there is no requirement that one party assume all of the

---

Way is not currently planning to claim against plaintiff over the matter, but its investigation continues.

1  costs of arbitration. That is exactly the point decided by the California Supreme Court in *Boghos v.*
2  *Certain Underwriters of Lloyd's of London*. *See* 36 Cal. 4th at 795-96. Moreover, plaintiff's agreement
3  provides a better deal than most non-*Armendariz* arbitration agreements; United Way has agreed to pay
4  the first $1,000 of arbitration costs. *See* McDonnell Decl., ¶ 5, Exh. B.

**IV.  TO THE EXTENT THAT ANY PROVISION IS DETERMINED TO BE PROCEDURALLY UNCONSCIONABLE, THE PROPER APPROACH IS TO SEVER THE OFFENDING PROVISION IN ORDER TO SAVE THE PARTIES' AGREEMENT TO ARBITRATE**

8  Assuming, *arguendo*, that any particular provision of the arbitration agreement is found to be
9  substantively unconscionable, the offending provision may be severed in order to save the agreement.
10 In *Little v. Auto Stiegler Inc.,* the California Supreme Court explained that where an "illegal provision
11 can be extirpated from the contract by means of severance or restriction, then such severance and
12 restriction are appropriate." 29 Cal. 4th at 1074, citing *Armendariz*, 4 Cal. 4th at 124.

13 Consistent with the strong public policy in favor of arbitration, courts will sever unconscionable
14 provisions and compel arbitration unless the entire agreement is permeated with unconscionability. *Id.*
15 at 122. If this Court finds any unconscionability in plaintiff's arbitration agreement, it surely does not
16 permeate the contract, and is instead "collateral to the main purpose of the contract." *Little,* 29 Cal. 4th
17 at 1075-75 (severing isolated unconscionable provision and compelling arbitration); *McManus v. CIBC*
18 *World Markets Corp.*, 109 Cal. App. 4th 76, 101-02 (2003) (severing unconscionable cost-splitting
19 provision and enforcement remainder of arbitration agreement); *Jones v. Humanscale Corp.*, 130 Cal.
20 4th 401, 405 (2005) (modifying rather than vacating arbitration award that required employee to pay half
21 of arbitrator's fees). Accordingly, at most severance would be proper here, not a rejection of plaintiff's
22 obligation to arbitrate.

**V.  PLAINTIFF'S FEAR OF INCONSISTENT ADJUDICATIONS IGNORES LEGAL AUTHORITY AND PROCEDURES THAT WOULD PREVENT SUCH INCONSISTENCY**

25 Finally, plaintiff contends that for the Court to compel arbitration of his Second Cause of Action
26 for Libel while his First Cause of Action for Wrongful Termination in Violation of Public Policy
27 remains pending before this Court would lead to inconsistent adjudications. Plaintiff ignores directly
28 contrary authority. The California Supreme Court has held that where a suit includes both arbitrable and

inarbitrable claims, "the arbitrable claims should be severed from those that are inarbitrable and sent to arbitration." *Broughton v. Cigna Healthplans*, 21 Cal. 4th 1066, 1088 (1999) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (federal law *requires* piecemeal resolution when necessary to give effect to arbitration agreement). This is true even if severance would lead to inefficiency. *Id.* at 1243-44 ("The preeminent concern of Congress in passing the [Federal Arbitration] Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation.").

Moreover, plaintiff ignores the availability of informal mechanisms that can prevent inconsistent adjudications. For example, when one of the claims is ready to be adjudicated, either the arbitrator or this Court can order a stay of the proceedings before it pending resolution of the other claim.[8]

## VI.   CONCLUSION

For the foregoing reasons, the Court should adhere to the "strong public policy" favoring arbitration, grant United Way's motion to compel, and order that plaintiff arbitrate his Second Cause of Action for Libel.

Dated: August 2, 2007.

JEFFREY D. WOHL
LAURA MONFREDINI
JEFFREY P. MICHALOWSKI
PAUL, HASTINGS, JANOFSKY & WALKER LLP

By: /s/ Jeffrey D. Wohl
Jeffrey D. Wohl
Attorneys for Defendant
United Way of the Bay Area

---

[8]   *Harper v. Ultimo*, 113 Cal. App. 4th 1402 (2003), cited by plaintiff, did not acknowledge *Broughton* or *Byrd*, much less distinguish them. *See id.*, at 1410-11. Moreover, it is not true that all the same issues to be litigated on plaintiff's First Cause of Action for Wrongful Termination in Violation of Public Policy would have to be arbitrated with respect to his Second Cause of Action for Libel. For example, the arbitrator could well find that the conclusion of United Way's investigation was true—plaintiff *did* create a hostile and intimidating environment for his staff and others—and thereby deny plaintiff's claim for libel, while this Court could adjudicate whether plaintiff was terminated by United Way for that reason or the reasons charged by plaintiff. By way of further example, it is not at all unusual for a union member who pursues an arbitration for wrongful discharge under his or her collective bargaining agreement also to pursue a Title VII court proceeding for discrimination. Courts and arbitrators have long accommodated such parallel proceedings notwithstanding their overlapping issues, and there is no reason why that cannot be done here.